UNITED STATES v. CAVALLIŌTIS.

Cr. A. No. 42634.

United States District Court
E. D. New York.

June 20, 1952.

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., George W. Waters, Jr., Asst. U. S. Atty., New York City, of counsel, for the United States.

Robert Barko, New York City, for defendant.

GALSTON, District Judge.

This criminal action is based on an information, filed February 16, 1951, which reads as follows:

"That on or about the 26th day of July, 1948, in the vicinity of Steinway Creek, which outlets into the tidal waters of the East River, within the Eastern District of New York, and within the jurisdiction of this Court, the defendant, Michael N. Cavalliotis, did unlawfully permit and cause to be sunk the trawler Gloucester on the south side of said Steinway Creek at 38th Street near 18th Avenue, Astoria, in such a manner as to obstruct and impede navigation in the harbor of New York and its adjacent tributary waters, and failed to commence the immediate removal of same and prosecute such removal diligently, in violation of Title 33, United States Code, Sections 409 and 411."

By stipulation, the parties agreed to a trial by the court without a jury.

The defendant is the owner of the trawler Gloucester, which is tied up near the off-shore end of the mooring rack of the Tri-Boro Ship Yard, Inc., in Steinway Creek. Steinway Creek empties into the East River. On the opposite side of the creek is the dock of the Consolidated Edison Company in Long Island City. The Gloucester is approximately 167 feet long by 22 feet wide, with a draft of 8 feet. It is steam propelled and has a wood hull.

The vessel was towed to its present mooring from Baltimore, Maryland. Due to faulty mooring the hull sprang a leak, causing the stern to sink, and it is resting in the mud alongside the mooring rack. The forward portion and bow, as well as the smoke stack, is visible above the tidal waters of the creek. The vessel is fastened to the rack by three 3-inch lines forward and three ¾-inch cables amidship. It is not marked by any buoy, beacon or other lights.

The width of Steinway Creek between the rack at which The Gloucester is tied up and the dock of the Consolidated Edison Company opposite, is from 250 feet to 270 feet. The end of the rack extends about 50 feet beyond the sunken stern of the vessel, according to Government witnesses, but defendant testified that the rack extends about 100 feet beyond the vessel.

Section 409 of Title 33, U.S.C.A., states:

"It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; * * *. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidently or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, * * * and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as hereinafter provided for."

744

Section 411 of Title 33, U.S.C.A., sets forth the penalty for obstruction of navigable waters.

 Section 409 is concerned with "navigable channels". The generally accepted definition of navigability, approved in recent decisions of the Supreme Court, see United States v. Appalachian Electric Power Co., 311 U. S. 377, 406, 61 S.Ct. 291, 298, 85 L.Ed. 243, is that given in The Daniel Ball, 10 Wall. 557, 563, 19 L.Ed. 999, as follows:

" 'Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, * * * when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.' "

 The judicial standards to be applied in determining whether a particular waterway is navigable within the meaning of the statute, "involve questions of law inseparable from the particular facts to which they are applied". United States v. Appalachian Electric Power Co., supra, 311 U. S. at page 404, 61 S.Ct. 291, 85 L.Ed. 243. In the case at bar, the only evidence of any navigable use in fact of Steinway Creek is testimony that coal colliers delivered coal to the Consolidated Edison Company dock. It was testified that these colliers draw from 27 feet to 29 feet of water. Exhibit 3, a map of the United States Coast & Geodetic Survey, published in July 1947 (with lights, beacons, buoys and dangers corrected for information received to November 26, 1951) indicates that on the side where the Consolidated Edison Company dock is located Steinway Creek is from 29 feet to 31 feet

deep at mean low water. This part of Steinway Creek, which is the deep channel, is indicated on Exhibit 3 in white shading. Exhibit 3 shows the depth on the opposite side of Steinway Creek where The Gloucester is tied up as 7 feet at mean low water. This part of the channel, varying in depth from 11 feet at the mouth of the Creek to a high of 12 feet and a low of 3 feet, is in blue shading on Exhibit 3.

Though the Government offered no proof that Steinway Creek is actually navigated by vessels of smaller draft in areas of the waterway only 12 feet to 3 feet in depth, it would appear that it is navigable by such vessels. Certainly any craft of proper draft could maneuver through this part of the channel.

 The Government contends that Steinway Creek is a navigable channel within the meaning of the statute from pierhead line to pierhead line. The navigability of Steinway Creek, unlike such adjacent large waterways as the East River and the North River, is not a matter of common knowledge of which judicial notice may be taken. Evidence of extensive and continued use is not necessarily controlling; susceptibility of use for transportation and commerce being the true criterion of navigability. United States v. State of Utah, 283 U. S. 64, 82–83, 51 S.Ct. 438, 75 L.Ed. 844. However, in the entire absence of evidence of any actual use or potential use, even of a limited or infrequent nature, there is very little in the instant case in the way of a *factual* peg upon which to hang a finding of navigability of that part of Steinway Creek in which The Gloucester is tied up. The most that can be said is that vessels of a limited draft might proceed along the rack.

 The Information alleges that the defendant "did unlawfully permit and cause" The Gloucester to be sunk, "in such manner as to obstruct and impede navigation". Assuming, without deciding, that the vessel is sunk in a navigable channel within the meaning of Section 409, the Government's proof fails to show that it is obstructing or impeding navigation. Steinway Creek, as noted, is between 250 feet and 270 feet wide at the place in question, while The Gloucester is shown to be 22 feet in width.

This would leave at least 228 feet for vessels entering and leaving Steinway Creek. The evidence adduced indicates that the coal colliers are able to maneuver in and out of the dock of the Consolidated Edison Company without danger of obstruction from The Gloucester. Since the colliers draw some 29 feet of water, it would be unlikely that they would approach The Gloucester in 7 feet to 12 feet of water. The only evidence of vessels entering and leaving Steinway Creek is that showing the use of the deep channel. Consequently it is not shown that The Gloucester, in 7 feet of water, is obstructing navigation. See The Montrose, D.C., 47 F.Supp. 719; Dahlmer v. Bay State Dredging & Contracting Co., 1 Cir., 26 F.2d 603.

The Government also contends that The Gloucester in its location and condition "was a menace to navigation because if the lines and cables attached were to part the vessel was liable to roll over and slide into deep water at the Creek entrance and so block the water way to navigation". The Government, however, has presented no evidence that the "menace" contemplated is reasonably likely to occur. There was no proof that the three lines and the three cables by which the vessel is tied to the rack were frayed or deteriorated, or that the vessel was in danger of disintegrating. Thus, this contention is not based upon any actual or threatened violation, but upon an assumed possible violation. This contention, incidentally, indicates the Government's position to be that the vessel will be an obstruction to navigation, not in the place where it is now tied up, but if and when it breaks free from the rack and "slide(s) into deep water at the Creek entrance".

It may be noted that The Gloucester sank in July of 1948, but the information was not filed until February, 1951. The considerable lapse of time between the two events is worthy of consideration as bearing upon the question whether the vessel constituted an obstruction to navigation.

The cases cited by the Government are distinguishable on several grounds. The most important distinction is that in those cases the question of whether the sunken vessel or other impediment constituted an obstruction to navigation was not in issue, for in each case there was in fact a collision between the sunken obstruction and some other vessel.

In view of the foregoing it must be concluded that the Government has failed to prove beyond a reasonable doubt that the defendant has violated Sections 409 and 411 of Title 33, U.S.C.A. The defendant is not guilty and will be discharged.

Appropriate findings of fact and conclusions of law will be filed concurrently with this decision.