**AGRI–TRANS CORPORATION,**
Plaintiff-Appellee,

v.

**GLADDERS BARGE LINE, INC., et al.,**
Defendants-Appellees,

and

**United States of America,**
Defendant-Appellant.

No. 82–4383.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1983.

Allen Van Emmerik, Civil Div., Torts Branch, Dept. of Justice, Washington, D.C., for defendant-appellant.

Courtenay, Forstall & Grace, Francis A. Courtenay, Jr., John S. Hunter, New Orleans, La., Lane & Henderson, Joel J. Henderson, Edward D. Lamar, Greenville, Miss., for Gladders Barge Line.

William E. O'Neil, Machale A. Miller, New Orleans, La., for Agri-Trans.

Before REAVLEY, RANDALL and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We are called upon to resolve the obligations of a non-negligent owner of a sunken barge, a negligent sinker, and the United States government. We hold that the non-negligent owner may abandon the wreck, thereby escaping liability for raising it, and that the responsibility for raising the wreck then devolves on the government, which may recover its costs from the negligent sinker if the wreck is shown to pose an obstacle to navigation or navigable capacity.

On April 28, 1979, the M/V Jean Gladders, a tug boat owned and operated by the Gladders Barge Line, Inc., while pushing barge AT–104, property of Agri-Trans Corporation, collided with a bridge spanning the Mississippi River at Baton Rouge, sinking the AT–104 at a spot where it still reposes. The accident is stipulated to have been caused wholly by the negligence of Gladders Barge Line, and in no way by any negligence of Agri-Trans or unseaworthiness of the AT–104.

The wreck of the AT–104 came to rest on the river bottom approximately 500 feet from the boundary of the ship channel. The Army Corps of Engineers [1] informed Agri-Trans that, as the sunken barge could constitute a hazard to navigation, it should be removed immediately. When further information concerning the barge's precise location was obtained, the Corps warned that it "could represent a future liability to its owner should it interfere with pipeline operations or future dredging requierments [sic] in the area." Agri-Trans considered raising the AT–104, but ultimately decided to abandon it. Notice of the decision to abandon was given to the Corps of Engineers which, in accordance with its regulations,[2] acknowledged but did not accept it. Agri-Trans also advertised its abandonment of the AT–104 in the Baton Rouge newspaper.[3]

When Agri-Trans later sued Gladders Barge Line to recover damages for the loss of the AT–104, Agri-Trans included the United States as a defendant, seeking a declaratory judgment that Agri-Trans was not liable to remove the sunken barge or to recompense the United States for expenses incurred by the Corps of Engineers should it elect to raise the barge. The United States counterclaimed for an order requiring Agri-Trans or Gladders Barge Line either to remove the barge or to pay the costs of removal.

---

**1.** Under 33 U.S.C. § 1 the Army Corps of Engineers has responsibility for keeping the navigable waters of the United States open to navigation and clear of obstructions.

**2.** 33 C.F.R. § 209.190(e)(1).

**3.** This advertisement read as follows:

> As a result of collision, the Barge AT–104 sank in the Mississippi River at 8:00 p.m. on April 28, 1979 in the vicinity of mile 233.0 A.H.P. Notice is hereby given that Agri-Trans Corporation, owner of the Barge AT–104, has abandoned all right, title and interest in the said vessel.

The district court, 542 F.Supp. 961, determined that fifth circuit precedent permits the non-negligent owner of a sunken barge to abandon his barge and thereby escape any statutory duty to remove the wreck, and granted declaratory judgment for Agri-Trans. The district court held that the burden of removing an abandoned wreck which poses an obstacle to navigation or navigable capacity falls on the United States, which may recover the costs of removal from the party whose negligence caused the sinking, here Gladders. Relying on the uncontradicted testimony of Gladders's expert, however, the district court concluded that the sunken AT–104 is not an obstruction to navigation or navigable capacity, and therefore need not be removed. As a result, the district court held that the United States—if it raises the AT–104—may not recover its costs from Gladders. The United States appeals from both parts of the district court's judgment.

### I

■ The obligations of the owner of a sunken barge are defined by the Wreck Act, 33 U.S.C. § 409, a part of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 401, *et seq:*

> It shall not be lawful . . . to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; . . . . And whenever a vessel . . . is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it . . . until the sunken craft is removed or abandoned . . . and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, . . . and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States . . . .

Two features of this statute are prominent here: First, the Wreck Act applies equally to negligent and non-negligent owners of sunken vessels. Second, the Wreck Act appears to permit all owners to escape responsibility for raising their sunken vessels by abandoning them.

This latter notion was quelled by the Supreme Court in *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), where the Court held that, despite the lack of affirmative statutory language to this effect, the Wreck Act left unimpaired the government's right to recover the costs of removing a sunken vessel from the party whose negligence caused the wreck:

> The Government may, in our view, seek an order that a *negligent* party is responsible for rectifying the wrong done to maritime commerce by a § 15 violation. Denial of such a remedy to the United States would permit the result . . . of a *wrongdoer* shifting responsibility for the consequences of his *negligence* onto his victim.

*Id.* at 204, 88 S.Ct. at 387 (emphasis added). The Court in no way implied that a non-negligent owner would not be able to avail himself of the abandonment mechanism. Thus, the Court held that if the government removed a sunken vessel that obstructed navigation, "the United States should not lose the right to place responsibility for removal *upon those who negligently sank the vessel.*" *Id.* (emphasis added).

■ The Supreme Court's focus on negligence is here relevant for two reasons: First, it implies that the cost of recovering a sunken vessel can be imposed on a negligent non-owner, a principle we adopted and applied in *University of Texas Medical Branch at Galveston v. United States,* 557 F.2d 438 (5th Cir.1977). Second, it implies that a non-negligent owner need not recover his sunken vessel unless he wishes to retain title; otherwise the statutory language concerning abandonment is rendered meaningless.

The Corps of Engineers's own regulations provide that "the owner of a vessel which is sunk without fault on his part may abandon the wreck, in which case he cannot be held liable for removing it." 33 C.F.R. § 209.-170(b). The government has here argued that this regulation misstates the law and is

contrary to prior holdings of this court. Apart from the anomolous repudiation by government counsel at oral argument of a regulation which the agency has never attempted to withdraw or modify through customary administrative procedures, our holding today makes clear that § 209.170(b) is an accurate statement of the law.

In earlier cases we have virtually foreclosed denial of the right of the non-negligent owner to abandon. *Tennessee Valley Sand & Gravel Co. v. M/V Delta,* 598 F.2d 930, 934 (5th Cir.1979), is representative:

> The owner of a vessel sunk without any negligence on his part is still subject to the statutory obligation to remove the wreck, but is given an option: he may either raise the vessel himself and seek recovery of the expenses from the party responsible for the sinking, or he may abandon the vessel and allow the United States to bear the burden of removal and recovery of expenses from the negligent party. If the non-negligent owner exercises his right to abandon, he is liable neither for the cost of removal nor for damages suffered by third parties as a result of the wreck.

*See also St. Paul Fire & Marine Ins. Co. v. Vest Transportation Co.,* 666 F.2d 932, 934 (5th Cir.1982); *Mecom v. Levingston Shipbuilding Co.,* 622 F.2d 1209 (5th Cir.1980).

Finally, the government here argues that abandonment relates only to rights, not to liabilities. We are not persuaded. The statutory right of abandonment would be devoid of significance if a non-negligent owner was generously permitted to renounce his right to recover the value of a raised wreck but could not thereby escape liability to pay the costs of raising the abandoned vessel. We decline to adopt so tortured a reading.

## II

The second phase of the government's appeal concerns the finding that Gladders Barge Line is not liable for the cost of raising the AT–104. We note that the district court did not order the Corps of Engineers not to raise the AT–104; rather, it made a factual determination that the AT–104 presently constitutes no obstruction to navigation or navigable capacity, and consequently that no recovery may be had from Gladders for the costs of raising it. It follows that the government's claim that the court usurped the Corps of Engineers's authority to determine whether—as a matter of preference—the sunken vessel ought to be raised is untenable.

The question of whether a wreck poses an obstacle is important only if the government's power to order negligent sinkers to remove wrecks is limited to wrecks that obstruct navigation or navigable capacity. Accordingly, we turn to the government's contention that the district court incorrectly applied the statutes defining the circumstances under which a sunken vessel is obliged to be removed. 33 U.S.C. § 403 provides: "The creation of any obstruction ... to the navigable capacity of any of the waters of the United States is prohibited ...." 33 U.S.C. § 409 provides: "It shall not be lawful to ... sink, or permit or cause to be sunk, vessels or other craft in navigable channels; ... [or to perform other acts] in such manner as to obstruct, impede, or endanger navigation." Though it is not strikingly clear that the "obstruct, impede, or endanger" clause in the latter statute refers back to the "sink, permit or cause to be sunk" clause, the district court rejected the government's argument that the statute requires all wrecks—including those not obstructing navigation—to be removed, on the basis of precedent in this and other circuits. *United States v. Raven,* 500 F.2d 728 (5th Cir.1974); *United States v. Cavalliotis,* 105 F.Supp. 742 (E.D.N.Y.1952).

The sunken barge AT–104 is undeniably within a navigable channel. The question, therefore, is whether this fact alone makes out a § 409 violation, or whether there must be a further showing that the AT–104 poses a hazard to navigation (as suggested by the comment in *Raven* that "[t]he purpose of [§ 409] is the protection of other vessels plying the same waters." 500 F.2d at 732). We seek guidance from the con-

struction of the statute followed by the agency with primary responsibility for its enforcement.

Though the Corps of Engineers argued to the district court that it may order the removal of all vessels sunk in navigable waterways, the regulations promulgated under § 409 suggest a contrary construction. Thus, when an accident occurs, 33 C.F.R. § 209.190(b)(1) provides: "The District Engineer should ascertain, at once, whether navigation is obstructed or endangered, and *if the obstruction must be removed,* he should inform the owner promptly of the provisions of the law" (emphasis added). The Corps plainly does not read the statute to require the removal of wrecks which are not obstructing navigable waterways. Neither do we.

■ The government claims that this holding permits Gladders to escape any liability for its negligence. This assertion is certainly true, but the Rivers and Harbors Appropriation Act is not designed to penalize negligence, only to keep the navigable waterways open; if Gladders's negligence has resulted in no obstruction of the river, Gladders is not subject to any sanction under the Act. *See Wyandotte,* 389 U.S. at 205, 88 S.Ct. at 387 ("*[I]n any case in which the Act provides a right of removal in the United States,* the exercise of that right should not relieve negligent parties of the responsibility for removal.") (emphasis added).

■ The government next argues that the Corps's determination that a wreck poses an obstacle to navigation or navigable capacity is unreviewable. The basis for the government's claim appears to be the discretion granted by Congress to the Secretary of the Army in various sections of the Rivers and Harbors Appropriation Act. Thus, 33 U.S.C. § 414 provides: "Whenever the navigation of any river . . . shall be obstructed or endangered by any [abandoned] sunken vessel . . . the sunken vessel . . . shall be subject to be broken up, removed, sold, or otherwise disposed of by the Secretary of the Army at his discretion . . . ." This statute does not give the Sec-

retary absolute discretion to determine that an obstruction exists. Section 414 establishes only that, even when the costs of removing a wreck will be borne by the sinker because the wreck constitutes an obstruction, the discretion to choose the manner in which the sunken vessel will be removed lies with the Secretary rather than with the party bearing the costs.

■ The fact that 33 U.S.C. § 415 grants the Secretary broad discretion in an emergency to determine that a hazard exists implies nothing with respect to non-emergency situations. It is not rare for Congress to provide greater discretionary powers to the officer in the field confronting an emergency than to the officer who has time for recourse to the courts.

In sum, the Wreck Act does not clearly refer the determination of whether a wreck poses an obstacle to navigation to the unreviewable discretion of the Corps of Engineers, and unreviewable discretion will not be presumed absent such a showing. *See generally Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The determination of whether a wreck poses an obstacle and must therefore be raised rests initially with the Corps, and that determination will be overturned by a reviewing court only if it is arbitrary or capricious. 5 U.S.C. § 706(2)(A).

■ The district court must review the administrative record on which the Secretary or his authorized subordinate concluded that an obstruction exists. Where this record is incomplete or insufficient, the court may hear testimony from the officers responsible for the decision or may receive a written statement of the findings underlying the administrative action. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420–21, 91 S.Ct. 814, 825–826, 28 L.Ed.2d 136 (1971). A decision which is not supported by administrative findings will be deemed arbitrary and capricious and must be struck down.

■ On the record before us, we are not convinced that the Corps has ever even made an administrative determination that

the AT–104 presently constitutes an obstacle to navigation or navigable capacity. Though the government alleged in its counterclaim that the AT–104 is an obstruction, the only evidence it presented at trial was a set of letters which flowed between the Corps and Agri-Trans and other interested parties. In the first of these letters, sent six days after the accident, the Corps advised Agri-Trans that "the vessel in its present location could constitute a hazard to navigation, [and] it should be removed immediately"; however, the AT–104's location was not precisely known at that time. Nearly four months later, when the site of the wreck had been learned, the Corps cautioned that the barge "could represent a *future liability* to its owner" (emphasis added); no mention was made of it posing a present hazard.[4]

 If the Corps has never administratively determined that the AT–104 as currently situated obstructs navigation, it follows that there is nothing for the courts to review. Thus, although we agree with the district court's finding on the evidence before it that the AT–104 does not appear to constitute an obstruction, we hold that this issue was not ripe for judicial consideration absent antecedent administrative action. A declaratory judgment action should not be used to circumvent the usual progression of administrative determination and judicial review.[5] *See Abbott Laboratories v. Gardner,* 387 U.S. at 148–49, 87 S.Ct. at 1515–1516; *Baldwin Metals Co. v. Donovan,* 642 F.2d 768, 775 n. 17 (5th Cir.1981), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981). Consequently, we vacate the district court's holding that the AT–104 presently poses no obstacle to navigation or navigable capacity.

In sum, we affirm the district court's holding which exculpates Agri-Trans from any further liability to mark or remove the AT–104. We also affirm the holding that

the Corps of Engineers may not require a negligent sinker to remove or pay for removing a wreck which poses no obstacle to navigation or navigable capacity. Because the AT–104 has not been administratively determined to pose an obstacle and costs of removal cannot be recovered from a negligent sinker without such agency action, we affirm the judgment that the Corps of Engineers has not established its entitlement to recover from Gladders the costs of raising the AT–104. On this same ground, we hold that the question of whether the AT–104 poses an obstacle was not properly before the district court, and we vacate the finding that the AT–104 currently poses no obstacle to navigation or navigable capacity.

AFFIRMED in part; VACATED in part.

---

**4.** In the same letter, by contrast, the Corps reported of another sunken vessel, not involved in this case, that "we must consider the vessel a hazard to navigation . . . ."

**5.** Such an action would make it impossible for the court to apply the proper standard of re-

view, for in order to rule in favor of the plaintiff, the court would have to determine that on some hypothetical administrative record it "would have been" an abuse of discretion for the Secretary to hold that an obstacle existed.