**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**BAYCON INDUSTRIES, INC. and
William R. Chittenden, Jr.,
Defendants-Appellees.**

No. 84–3002.

United States Court of Appeals,
Eleventh Circuit.

Oct. 26, 1984.

Daniel F. Fromstein, Washington, D.C., for plaintiff-appellant.

Claude H. Tison, Jr., Tampa, Fla., for defendants-appellees.

Before FAY and JOHNSON, Circuit Judges, and YOUNG *, District Judge.

* Honorable George C. Young, U.S. District Judge for the Middle District of Florida, sitting by designation.

JOHNSON, Circuit Judge:

In this criminal prosecution the United States appeals from the dismissal of two counts of a three count information filed under the Rivers and Harbors Act, 33 U.S.C.A. § 401 *et seq.* The counts that were dismissed charged appellees Baycon Industries, Inc., and Chittenden (then its vice-president) with "creating an obstruction to the navigable capacity" and "alter[ing] and modify[ing] the conditions" of Tampa Bay, in violation of Section 10 of the Act, 33 U.S.C.A. § 403.[1] The government sought the imposition of criminal penalties, as specified in 33 U.S.C.A. § 406.[2] The United States District Court for the Middle District of Florida, Tampa Division, dismissed the information on the ground that appellants had alleged no volitional or causal act on the part of appellees that created the obstruction, alteration or modification of the Bay waters. Because we agree that counts one and three of the information do not allege facts sufficient to expose appellees to criminal liability, we affirm.

## I. FACTUAL BACKGROUND

Baycon Industries, Inc., was the owner of the dredge barge ALSATIA II, valued at approximately $100,000–150,000. On August 21, 1981, the ALSATIA II was attached to a tug to be towed from Bradenton, Florida, where it was moored, to Tampa, where it was to be examined by a prospective purchaser. At approximately 1:00 AM on August 22, while traveling on the main ship channel of Tampa Bay, the ALSATIA II began to take on water at a rapid rate. As the water was entering faster than crewmen could pump it out, the barge began to settle. The tug captain left the main ship channel and headed through shallow water toward Gadsden Point, in an effort to beach the tow. Halfway between the channel and the shore, the ALSATIA II sank in water about twelve feet deep. Though the hull of the barge is now submerged, the upper twenty feet of superstructure remain out of the water. There is no contention by the government that the sinking of the ALSATIA II was proximately caused by the willful or negligent act of appellees.

Baycon initially planned and agreed to conduct salvage and removal operations itself, but was informed by salvage consultants that removal would cost between $200,000 and $400,000. The prospective costs evidently persuaded Baycon to abandon the vessel, despite the insistence of the Army Corps of Engineers that Baycon remove it. The barge remains today in the place where it sank almost three years ago.

## II. THE CREATION OF AN OBSTRUCTION UNDER SECTION 10

The information states that by "permitting [the ALSATIA II] to remain sunk", appellees "created an obstruction" and "altered or modified" the condition of Tampa Bay. Appellant contends that the district court erred in dismissing the information, which it claims is sufficient in light of the language and the strict liability character of the Act. We agree with the district court that neither of these features obviates the need to allege some volitional act on the part of appellees that created the obstruction.

 Appellant's reliance on the strict liability character of the statute is misplaced,

1. 33 U.S.C.A. § 403 states in pertinent part:
 The creation of any obstruction not affirmatively authorized by Congress, *to the navigable capacity* of any of the waters of the United States is prohibited ... and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

2. The government has also filed a civil action under 33 U.S.C.A. §§ 403 and 409. In this action, which will be discussed *infra,* the government seeks injunctive relief requiring Baycon to remove the vessel or reimburse the United States for the cost of removal. No further action, including discovery, has taken place on the civil case, pending resolution of the criminal case.

for it confuses the requirement of causation with the requirement of specific intent. As a strict liability statute, Section 10 does not require the government to allege that appellees intended to perform the acts proscribed. *United States v. Bowen,* 428 F.Supp. 754, 756 (D.Md.1976). It does, however, require an allegation that appellees' acts caused the obstruction in question. See *id.* at 757 (government required to demonstrate that defendants erected seawall, though not that they intended to create obstruction). The Model Penal Code states that: "When causing a particular result is a material element for which absolute liability is imposed by law, the element is not established unless *the actual result is a probable consequence of the actor's conduct."* Model Penal Code § 2.03 (Proposed Official Draft § 1962) (emphasis added). The government has alleged no actions on the part of appellees that had the probable consequence of creating an obstruction in the navigable waters in question.

▉ The government argues next that its allegation is rendered sufficient by the language of the statute. Because Section 10 does not require it to allege specific affirmative acts, the government claims, it is possible to allege the creation of an obstruction by alleging the failure to re-move one.[3] This argument, however, ignores the clear meaning of the provision's most salient terms. "To create", "to alter" and "to modify" are words of action. They do not describe, nor can they logically be equated with, passive behavior or a failure to act. The active character of this language is even more apparent when it is compared with Section 15, 33 U.S.C.A. § 409, the provision establishing a duty to remove.[4] The difference in the relevant terms supports the conclusion of the district court that, while "permitting to remain sunk" may allege an offense under Section 15, it does not allege an offense under Section 10.

The relevant precedent also requires the government to allege an affirmative act which connects the appellees with the creation of an obstruction. Every court which has considered a criminal charge under Section 10 has required the demonstration of some causal act—in many cases a deliberate act, though in all cases at least a negligent act[5]—before permitting criminal liability to attach. *See United States v. Raven, supra,* at 730; *United States v. Cargill,* 367 F.2d 971, 972 (5th Cir.1966), *aff'd sub nom. Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); *United States v. Ohio Barge Lines,* 607 F.2d 624, 627 (3rd

3. Appellant also relies on *United States v. Raven,* 500 F.2d 728 (5th Cir.1974), in which the court imposed criminal liability on a shipowner who "permitted [his vessel] to sink and remain sunk." That case, however, provides inadequate support for the proposition appellant seeks to advance. By alleging that the shipowner "permitted [his vessel] to sink," the information in *Raven* connected the shipowner with the creation of the obstruction (i.e., the sinking of the ship) in a way that the instant information does not. Moreover, the court's decision to impose liability in that case was also based on the government's demonstration that defendant had failed to make adequate efforts to pump out the vessel at the time it began to sink. *Id.* at 730. No behavior of this sort is alleged in this case.

4. 33 U.S.C.A. § 409 states in pertinent part:

And whenever a vessel, raft or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise ... it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in Sections 411 to 416, 418 and 502 of this title.

Appellant's interpretation of Section 10 would render the removal provisions of Section 15, which are evidently intended to serve a distinct purpose, mere surplusage.

5. The case law reveals some disagreement among the courts as to whether it is necessary to allege a *deliberate* (or intentional) act which resulted in the creation of the obstruction, or whether it is sufficient simply to allege a *negligent* act which produced the obstruction. *Compare United States v. Ohio Barge Lines, Inc., supra,* at 627 (holding deliberate act required) *with United States v. Cargill, supra,* at 977–78 (suggesting that negligent act sufficient). It is not necessary to reach this question in the instant case, as appellant has not alleged even negligent conduct on the part of appellees.

Cir.1979); *United States v. Hall,* 63 F. 472, 474 (1st Cir.1894). Because appellant fails to allege any causal, volitional act on the part of appellees which created the obstruction in question, count one of the information fails to state a claim under Section 10. Count three, which is based on similar language in the same provision ("to alter or modify") fails on the same ground.

We note that this conclusion bears in no way on the merits of the civil case now pending before the United States District Court for the Middle District of Florida. The civil case raises a separate issue: not whether a shipowner, against whom no specific allegations of misconduct have been made, may be subject to criminal penalties; but whether a shipowner, who takes a vessel on the public waterways for his own commercial advantage, may impose upon the public the cost of removing that vessel when it sinks in such a location that it impairs navigation. Courts of this jurisdiction have applied a distinct body of precedent in adjudicating claims of the latter type.

Section 15, as noted above, confers on shipowners a "right of abandonment." The conditions under which this right may immunize shipowners against actions for removal and removal costs have been the subject of considerable recent litigation. *See Tennessee Valley Sand & Gravel v. M/V Delta,* 598 F.2d 930 (5th Cir.1979); *In Re Marine Leasing Services, Inc.,* 471 F.2d 255 (5th Cir.1973); *United States v. Cargill, supra. See also Agri-Trans v. Gladders Barge Line, Inc.,* 721 F.2d 1005 (5th Cir.1983). Some of these opinions have held that a non-negligent owner is not liable for removal or removal costs when he abandons his craft. Yet such cases have almost always involved natural disasters, third party negligence or some factor which excludes the probability of shipowner negligence. *See Agri-Trans Corp. v. Gladders Barge Line, Inc., supra,* at 1007 (sinking attributable to third party negli-

gence); *In Re Marine Leasing Service Inc., supra,* at 256 (sinking attributable to hurricane.) This is not such a case. The ALSATIA II, a 40 year old vessel, sank in clear weather, absent any interference by another vessel. These facts highlight no intervening cause of the sinking; they may, as appellant suggests, establish negligence under a theory of *res ipsa loquitur.*[6] To adopt a rule permitting owners whose negligence is not precluded by the facts to "walk away" from their sunken crafts would confer on shipowners a substantial windfall, at the expense of those whose tax dollars create and maintain our public waterways.

The responsibility of shipowners who use public waterways for commercial benefit is, however important, a separate question which must await resolution on another day. We hold in this case only that an information which does not allege a causal connection between the acts of a shipowner and the creation of an obstruction does not state a claim for criminal liability under 33 U.S.C.A. § 403.

AFFIRMED.

---

6. Appellant raises the possibility that the facts may establish appellees' negligence under a theory of *res ipsa loquitur.* Appellant's Brief at 11 and n. 8. The government does not press this claim in the criminal action, however, because it seeks primarily to determine whether its information (which does not allege negligence on the part of appellees) is sufficient to state a claim under 33 U.S.C.A. § 403.