United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 14, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————————————————

No. 05-30908

————————————————

MICHAEL T. FUESTING,

Plaintiff - Appellant,

versus

LAFAYETTE PARISH BAYOU VERMILION DISTRICT; LAFAYETTE INSURANCE COMPANY,

Defendants - Appellees.

————————————————————————————————

Appeal from the United States District Court
for the Western District of Louisiana

————————————————————————————————

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this suit involving the allision of a pleasure boat with a partially submerged and abandoned shrimp boat, the pleasure boat owner, Michael Fuesting, appeals the district court's grant of summary judgment in favor of defendant Lafayette Parish Bayou Vermilion District (the "District"). Fuesting argues that the district court erred in finding that Louisiana's governmental statutory immunity law precluded his general maritime law claim and that the district court erred in finding that the District was not an "operator" under the Wreck Act, thereby dismissing Fuesting's negligence claim premised on the Wreck Act. For the following reasons, we reverse.

# I. FACTS AND PROCEEDINGS

This lawsuit stems from the July 2001 allision between Michael Fuesting's small pleasure boat and a sunken shrimp boat near a bank of the Vermilion River in Lafayette Parish, Louisiana. Keith Griffin, the shrimp boat's owner, had docked the boat in 1994 at a dock owned by Alfred and Joyce Hatch. The boat was allowed to deteriorate over a number of years, and it eventually sank to the riverbed. Some of the boat remained visible above the waterline. Local citizens eventually complained to the Lafayette Parish Bayou Vermilion District about the eyesore created by the partially submerged shrimp boat. In January 2001, the District received permission from Griffin to attempt to refloat the boat and remove it from the river. The attempt failed, and the boat remained partially submerged. The parties dispute the relative success of the District's attempted removal: The District argues that its efforts only moved the boat a few feet and rotated it 180 degrees, thus leaving the boat out of the navigational channel. Fuesting argues that the boat had moved further before again sinking to the riverbed. At no time before or after the District's attempted removal was the submerged shrimp boat marked with buoys or lights.

The allision occurred around sunset on July 3, 2001. Fuesting claims that the water level was higher than usual, such that almost all of the boat was submerged. As a result of the allision, Fuesting was thrown from his boat, knocked unconscious, and injured.

Fuesting sued the District, the District's insurer, Lafayette Insurance Co. ("Lafayette"), along with other defendants, in December 2002. The other defendants were dismissed from the case.[1] Fuesting's allegations were that the District was a responsible party under the Wreck Act and was

---

[1]Though dismissed as defendants to Fuesting's action, the Hatches were brought back into the suit via a third-party indemnity claim filed by the District.

negligent under general maritime law. The District, joined by Lafayette, moved for summary judgment. Fuesting opposed the motion and filed its own motion for partial summary judgment as to the claim premised on the Wreck Act. The district court granted summary judgment to the District as to the Wreck Act violation because the court determined that the evidence provided by Fuesting could not support a finding that, for Wreck Act purposes, the District was an operator of the shrimp boat when it attempted to remove it from the river.

The district court found, however, that the District might still be negligent under general maritime law pursuant to *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955), because it assumed the duty to the boating public to remove the shrimp boat from the river in a non-negligent manner. Rather than address the merits of this negligence claim against the District, the court *sua sponte* requested briefing on the impact of LA. REV. STAT. 9:2798.1, which grants statutory immunity to public entities for "policymaking or discretionary acts." The court found that the District, which the parties agree qualifies as a public entity under the statute, is immune from Fuesting's general maritime law negligence claim because that claim arose from discretionary acts of the District. The district court dismissed all of Fuesting's claims and dismissed the indemnity claims against the Hatches as moot. Fuesting filed a timely notice of appeal.

## II. STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed de novo. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing FED. R. CIV. P. 56(c)).

## III. DISCUSSION

3

**A. Louisiana immunity statute**

As to Fuesting's general maritime law negligence claim, the court granted summary judgment in favor of the District because, in its view, the District's attempt to move the shrimp boat was a protected act under LA. REV. STAT. § 9:2798.1(B).[2]

We must address an important threshold question not addressed by the parties or the district court: whether a state statute limiting the liability of a municipal entity like the District prevents a cause of action arising under the admiralty laws of the United States. Over a century ago, the Supreme Court held that the New York City Fire Department could not employ a New York state law exempting municipal entities from tort liability to defeat a suit against it in admiralty. *Workman v. City of New York*, 179 U.S. 552, 557–63 (1900). The *Workman* Court reasoned that admiralty law is not displaced by local law; if it were, the uniformity of maritime law would be undermined. *Id.* at 558–59. The Court then responded to the city's contention that state law protected it:

> The maritime law affords no justification for this contention, and no example is found if such law, where one who is subject to suit and amenable to process is allowed to escape liability for the commission of a maritime tort, upon the theory relied upon[, state law]. We, of course, concede that where maritime torts have been committed by the vessels of a sovereign, and complaint has been made in a court of admiralty, that court has declined to exercise jurisdiction, but this was solely because of the immunity of sovereignty from suit in its own courts. . . . [This rule], however, proceed[s] upon the hypothesis of the want of a person or property before the court over whom jurisdiction can be exerted. As a consequence, the doctrine above stated rests, not upon the supposed want of power in courts of admiralty to redress a wrong committed by one over whom such courts have adequate jurisdiction, but alone on their inability to give redress in a case where jurisdiction over the person or property cannot be exerted. . . .

---

[2]Section 9:2798.1(B) provides:
> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

> [I]t follows that as the municipal corporation of the city of New York, unlike a sovereign, was subject to the jurisdiction of the court, the claimed exemption from liability asserted in the case at bar . . . was without foundation in the maritime law, and therefore afforded no reason for denying redress in a court of admiralty for the wrong which the courts below both found to have been committed.

*Id*. at 566, 570. The *Workman* Court's holding recognizes that municipalities do not enjoy Eleventh Amendment sovereign immunity. Recently, that proposition has been invoked more explicitly. *See Jinks v. Richland County*, 538 U.S. 456, 466 (2003) ("[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit."). *See also N. Ins. Co. of New York v. Chatham County*, — U.S. —, 126 S. Ct. 1689, 1694-95 (2006) (endorsing the "general principle" found in *Workman* "that sovereign immunity does not bar a suit against a city" and rejecting a county's sovereign immunity defense in an admiralty suit). However, a municipality can be immune from suit if it was "acting as an arm of the State, as delineated by [the Supreme] Court's precedents." *Chatham County*, 126 S. Ct. at 1694 (citing *Alden v. Maine*, 527 U.S. 706, 756 (1999), and *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 400–01 (1979)). The District, merely because of its status as a public entity and because it meets the criteria of LA. REV. STAT. § 9:2798.1, is not immune from suit in admiralty. The district court must consider whether the *Workman* principle applies.[3] We invite the district court to do so upon remand.

## B.    The Wreck Act

The Wreck Act, 33 U.S.C. § 409, provides in relevant part:

> [W]henever a vessel, raft or other craft is wrecked and sunk in a navigable channel, it shall be the duty of the owner, lessee, or operator of such sunken craft to immediately mark it with a buoy or beacon during the day and, unless otherwise granted a waiver by the Commandant of the Coast Guard, a light at night, and to

---

[3]For this reason, we do not address the parties' contentions on appeal concerning whether the District's acts fall within the protection of LA. REV. STAT. § 9:2798.1.

maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner, lessee, or operator so to do shall be unlawful; and it shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently . . . .

The provisions of the Wreck Act thus apply only to owners, lessees, and operators of sunken crafts. Fuesting's position is that the District is an operator. The summary judgment evidence on this point includes (1) an agreement between Griffin and the District, whereby Griffin agreed to hold harmless the District[4] and (2) the District's failed attempt to remove the shrimp boat. In response to Fuesting's operator argument, the District both below and on appeal points out that the agreement between Griffin and the District was a mere release of liability and argues that the agreement does *not* make the District an operator under the Wreck Act. The court below agreed with the District and held that the District was at no time an operator of the shrimp boat. In particular, the district court found that:

> [T]he agreement between the District and Griffin, and the actions taken by the District, do not render the District an "operator" of the sunken shrimp boat as that term was intended under the Wreck Act. Even if the Court determined that the document signed by Griffin was sufficient to create a towing contract, which it does not, the fact remains that the boat was never towed anywhere by the District, whose attempt to move the boat was almost completely unsuccessful.

(footnote omitted).

Because the district court's unsupported application of the term "operator" is too narrow, we disagree with its finding that the District was not an operator under the Wreck Act. Indeed, the district court's narrow interpretation of responsible parties runs counter to the original purpose of the Act and the purpose of the 1986 amendment.

A purpose of the Wreck Act was to facilitate the marking or removal of dangerous

---

[4]The agreement contains no reference to the removal of the shrimp boat. However, the District does not argue that the hold-harmless agreement pertains to anything other than the removal of Griffin's shrimp boat from the Vermilion River.

obstructions in navigable waters. *Univ. of Tex. Med. Branch v. United States*, 557 F.2d 438, 441 (5th Cir. 1977) ("Congress sought to ensure that navigable waterways remained free of obstructions, including sunken vessels."). The purpose of amending the Wreck Act in 1986 was to increase the ability of the Corps of Engineers to recover wreck-removal expenses. *See* S. REP. NO. 99-126, at 26 (1985) (noting that ordinarily recovery costs exceed salvage value). The District does not contest the position that a towing vessel can violate the Wreck Act and, therefore, have responsibility for the removal of a sunken tow owned by a non-negligent party. *See Agri-Trans Corp. v. Gladders Barge Line, Inc.*, 721 F.2d 1005, 1008 (5th Cir. 1983) (noting that "the cost of recovering a sunken vessel can be imposed on a negligent non-owner"). *See also St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co.*, 666 F.2d 932, 941 (5th Cir. 1982) ("[T]he negligent owner of the towing vessel . . . would be personally liable to the government for the cost of removal of the sunken vessel as a hazard to navigation unless [the owner] promptly removed the barge.").[5] Instead, the District claims, and the court below agreed, that the agreement between Griffin and the District was not a towage contract because the written release from liability did not contain any statements related to movement of the vessel or towage. Oral contracts, however, are valid in admiralty. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961). The district court erred by resolving this issue by reference to the written agreement alone.

The district court also found that, even if the agreement between Griffin and the District were a towing agreement, the District's actions in attempting to move the boat did not confer operator

---

[5]Though *Vest Transportation* and *Gladders Barge Line* discuss liability in terms of negligent owners and negligent non-owners, Congress has since amended the Wreck Act, replacing the fault-based standard with a strict liability standard. *In re Barnacle Marine Mgmt. Inc.*, 233 F.3d 865, 868 n.6 (5th Cir. 2000).

status because such actions were "almost completely unsuccessful." We disagree. An entity that enters a towing contract but subsequently fails to tow the vessel as far as intended does not escape operator status because of its failure. This result better aligns the definition of operator with Congress's intent so as to not limit the potential sources of cost recovery for the government and the pool of persons to fulfill the duties imposed under the Wreck Act. The district court erred in finding that, even if there was a towing agreement, because the District's attempted removal of the shrimp boat was unsuccessful, the District was not an operator under the Wreck Act.

## IV. CONCLUSION

Fuesting's general maritime negligence claim should not have been dismissed merely because the District satisfied the criteria in Louisiana's governmental immunity statute. Additionally, the district court erred in concluding that the District was not an operator under the Wreck Act. We REVERSE the district court's decision and REMAND for proceedings not inconsistent with this opinion.