United States Court of Appeals
Fifth Circuit

**F I L E D**

June 27, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-50106
_____

CUSTOM RAIL EMPLOYER WELFARE TRUST FUND,

Plaintiff - Appellant,

versus

MICHAEL GEESLIN, Texas Commissioner of Insurance,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

Before JONES, Chief Judge, and JOLLY and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal requires us to interpret a particular provision of ERISA[1] for the first time. In doing so, we focus on the statutory requirement that the instant employee welfare benefit plan must be "fully insured" in order for certain state regulation to be preempted by federal law. The Custom Rail Employer Welfare Trust Fund ("CREW") asserts that it is a "fully-insured" multiple employer welfare arrangement ("MEWA") and accordingly brought this injunctive and declaratory action against the Texas Commissioner of Insurance ("the Commissioner") to require the state to accept the preemptive effect of federal law. Here, although as a practical matter CREW appears to be "fully insured" with Lloyd's of London,

_____

[1] Specifically, 29 U.S.C. § 1144(b)(6)(D) (2006).

the statutory _sine qua non_ of that formal status is nevertheless missing -- that is, the declaration of the Secretary of Labor that CREW is "fully insured." Thus because the Secretary has not spoken, CREW is not "fully insured" within the meaning of the statute and we affirm the district court's grant of summary judgment to the Commissioner.

I.

CREW is a welfare plan that offers medical, disability and death benefits to employees of the members of the Small Railroad Business Owners Association of America. CREW and the Railroad Owners group are based in Washington, D.C., and cover (among others) three member railroads that are located in the state of Texas. The purpose of CREW is to serve as an affordable method for small railroads, which are not eligible to participate in state workers' compensation programs, to cover the costs of occupational diseases and injuries of employees. As an employee welfare benefit plan, CREW is designed to qualify as a MEWA within the definitions of those terms in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (2006).

In May 2003, CREW asked the Texas Department of Insurance ("TDI") for a Certificate of Authority to operate as a MEWA in Texas. On February 26, 2004, TDI advised CREW that it would not be allowed to function as a MEWA in Texas because, among other

reasons, its insurer was not authorized to do business in Texas.[2] CREW's contract of insurance is with Certain Underwriters at Lloyd's, London ("Lloyd's"), which is a licensed insurer in Illinois but not in Texas. The contract with Lloyd's guarantees all claims covered in the program CREW runs and purports thereby to render CREW a "fully insured" MEWA for ERISA preemption purposes.

## II.

In May 2004, having received the formal notice from TDI, CREW filed suit in federal district court in Austin, Texas, seeking an injunction and declaratory judgment against the Commissioner, contending that CREW was "fully insured" and thus exempt from most state regulation under ERISA's preemption scheme.

The parties filed cross-motions for summary judgment. In granting judgment for the Commissioner, the district court reasoned that the dispositive issue in the case was whether CREW is "fully insured" within the meaning of ERISA. The district court concluded that under the plain language of the statute, CREW could not be "fully insured" without a determination to that effect by the Secretary of Labor, and none had been made. Thus the district court denied CREW declaratory and injunctive relief. CREW then timely filed this appeal.

## III.

---

[2] We do not express any opinion on the parties' arguments to us on this point. This issue was not part of the district court's ruling and is not dispositive of this appeal.

3

A.

This court reviews a grant of summary judgment <u>de novo</u>. <u>Fuesting v. Lafayette Parish Bayou Vermilion Dist.</u>, 470 F.3d 576, 578 (5th Cir. 2006). "Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." <u>Id.</u>

The statute we are called upon to apply is one of the many provisions of ERISA, and the relief sought by CREW is preemption under ERISA of state regulation. Speaking on a general level, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" described in ERISA. 29 U.S.C. § 1144(a) (2006). "The pre-emption clause is conspicuous for its breadth." <u>FMC Corp. v. Holliday</u>, 498 U.S. 52, 58 (1990). The breadth of the preemption clause, however, is limited by a "savings clause," <u>id.</u>, which provides that "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." § 1144(b)(2)(A). Finally, the "deemer clause" in subparagraph (B)[3]

---

[3] The full subparagraph provides: "<u>Neither</u> an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), <u>nor</u> any trust established under such a plan, <u>shall be deemed</u> to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." § 1144(b)(2)(B) (emphasis added).

4

restricts the savings clause, as it exempts employee benefit plans from state regulation as insurance companies. § 1144(b)(2)(B); FMC Corp., 498 U.S. at 58.

In 1983 Congress became concerned that MEWAs were insufficiently solvent and reintroduced state regulation over them, using two different levels of scrutiny. See Bryan A. Liang, *Patient Injury Incentives in Law*, 17 YALE L. & POL'Y REV. 1, 86 n. 380 (1998). If a MEWA is fully insured, state regulation is limited to that necessary for the state to ensure solvency through requirements for reserve and contribution levels. § 1144(b)(6)(A)(i); Atlantic Healthcare Benefits Trust v. Googins, 2 F.3d 1, 5 (2d Cir. 1993). If, on the other hand, a MEWA is not fully insured, state insurance regulation "may apply to the extent not inconsistent" with ERISA. § 1144(b)(6)(A)(ii).

## B.

The parties agree that this appeal presents a case of statutory interpretation. CREW, however, also asserts that we must turn to a Department of Labor "Guide" to understand the statute. The Supreme Court has reminded us that "in all cases involving statutory construction, our starting point must be the language employed by Congress, ... and we assume that the legislative purpose is expressed by the ordinary meaning of the words used."

5

INS v. Phinpathya, 464 U.S. 183, 189 (1984) (quotation marks and citations omitted).

The statute in question provides:

> For purposes of this paragraph, a multiple employer welfare arrangement shall be considered fully insured <u>only if</u> the terms of the arrangement provide for benefits the amount of all of which <u>the Secretary determines</u> are guaranteed under a contract, or policy of insurance, issued by an insurance company, insurance service, or insurance organization, qualified to conduct business in a State.

§ 1144(b)(6)(D) (emphasis added).

On the other hand, when the terms of a statute are ambiguous we are allowed to consider other sources that may shed light on the meaning of those terms; here CREW urges us to consider the Guide in our analysis. The Guide states in relevant part: "In this regard, a determination by the Department of Labor as to whether a particular MEWA is 'fully insured' is not required in order for a state to treat a MEWA as 'fully insured' for purposes of applying State insurance law in accordance with Section [1144(b)(6)]."[4]

The language of the statute seems clear and emphatic in this crucial respect: A MEWA is "fully insured" only when the Secretary of Labor says that it is.[5] The Secretary has not said so with

---

[4] PENSION AND WELFARE BENEFITS ADMIN., U.S. DEPT. OF LABOR, MULTIPLE EMPLOYER WELFARE ARRANGEMENTS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT: A GUIDE TO FEDERAL AND STATE REGULATION, available at: http://www.dol.gov/ebsa/publications/mewas.html (last checked: May 23, 2007).

[5] We do not interpret the statute to mean that the Secretary

6

respect to CREW.  Nevertheless, CREW argues, based primarily on the Guide, that we should conclude that it is "fully insured" under the following rationale: (1) that the only relevant determination is a federal one by the Secretary of Labor -- and not by the Commissioner -- and the Secretary has used its MEWA Guide to announce that she need not make individual determinations; (2) that CREW does not require a determination by the Secretary because Congress did not provide an administrative procedure to require the Secretary to respond to such requests; (3) that CREW has complied with all advisory opinions issued by the Secretary of Labor regarding fully-insured MEWAs; and (4) that the language of CREW's contract with Lloyd's tracks the language of § 1144(b)(6)(D), thus guaranteeing that it is "fully insured."

CREW first posits that, irrespective of what the state regulators may or may not require, the state has no role in determining whether a MEWA is "fully insured"; the federal government is the only relevant interpreter of the meaning of "fully insured."  CREW elaborates further, suggesting that the Secretary has acted in this instance when it issued the Guide; furthermore, there is no difference between the Secretary permitting a state to treat a MEWA as fully insured, which the

_____

of Labor necessarily must make an individual determination with respect to each MEWA; we thus do not preclude that the statute might be satisfied by the Secretary setting forth terms for qualifying as "fully insured" that would apply to all MEWAs and further allowing a method for recognition of those that qualify.

7

Guide clearly allows, and the Secretary requiring the state to treat a MEWA as fully insured. This is true because federal authority has no power to require regulation by the state, and, given that it can only preempt the state from acting, we can only conclude that this is precisely what the Guide in effect does.

This argument fails because CREW misinterprets the MEWA Guide and draws unsupported conclusions therefrom. Although the Guide allows the state to reduce state regulation to the minimal level as if it were preempted by § 1144(b)(6)(D), the reduced level of regulation does not result from the force of a federal statute but instead results from the voluntary and revocable decision of the state regulator. As even CREW implicitly suggests, this state action cannot be an act of federal preemption. The Guide only provides that a state may exercise its discretion in determining the degree of regulatory control it will assert over MEWAs, so long as the Secretary of Labor has not spoken to the subject. In other words, this specific statement in the Guide reflects that the Secretary is clarifying that state regulators may, in their discretion, decide that a MEWA is fully insured and assert minimal regulation. There is nothing in the MEWA Guide, however, that requires a state regulator to do anything.

In sum, the Guide sentence upon which CREW relies cannot be read as an announcement that a MEWA may declare itself "fully insured" (and thus render state law preempted) by its own edict on the basis that state regulators are indulged by the Secretary to

8

exercise their discretion to impose a lesser degree of regulation. More central to our analysis, however, this reading contradicts the plain meaning of the statute, which in unambiguous terms requires a determination by the Secretary for MEWAs to be declared "fully insured." Here, the Secretary has not spoken to the point. Nothing in the Guide puts this omission into doubt. Therefore, based on the plain language of the statute, we reject CREW's arguments on appeal.

## IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.