(Slip Opinion)          OCTOBER  TERM,  2005          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## NORTHERN INSURANCE COMPANY OF NEW YORK *v.* CHATHAM COUNTY, GEORGIA

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 04–1618.   Argued March 1, 2006—Decided April 25, 2006

Petitioner insurance company filed this admiralty suit against respondent County seeking damages resulting from a collision between a malfunctioning County drawbridge and a boat insured by petitioner. Granting the County summary judgment, the District Court recognized that Eleventh Amendment immunity from suit does not extend to counties, but relied on Circuit precedent to conclude that sovereign immunity extends to counties and municipalities that, as here, exercise power delegated from the State.  The Eleventh Circuit, which was bound by that same precedent, affirmed.  It acknowledged that the County did not assert an Eleventh Amendment immunity defense, which would fail because, under other Circuit precedent, the County did not qualify as an "arm of the State."  The Court of Appeals nonetheless concluded that common law has carved out a "residual immunity" that protects political subdivisions such as the County from suit.

*Held:* An entity that does not qualify as an "arm of the State" for Eleventh Amendment purposes cannot assert sovereign immunity as a defense to an admiralty suit.  Pp. 3–7.

   (a) Immunity from suit "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments."  *Alden* v. *Maine,* 527 U. S. 706, 713.  Thus, the phrase " 'Eleventh Amendment immunity' . . . is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment."  *Id.,* at 713.  Because preratification sovereignty is the source of immunity from suit, only

States and arms of the State possess immunity from suits authorized by federal law. See, *e.g., id.,* at 740. Accordingly, sovereign immunity does not extend to counties, see, *e.g., Lake Country Estates, Inc.* v. *Tahoe Regional Planning Agency,* 440 U. S. 391, 401, and n. 19, even when they "exercise a 'slice of state power,' " *id.,* at 401. The County argues unconvincingly that this Court has recognized a distinct "residual" immunity that permits adoption of a broader test than it applies in the Eleventh Amendment context to determine whether an entity is acting as an arm of the State entitled to immunity. The Court has referenced only the States' "residuary and inviolable sovereignty" that survived the Constitution. See, *e.g., Federal Maritime Comm'n* v. *South Carolina Ports Authority,* 535 U. S. 743, 751. Because the County may claim immunity neither based upon its identity as a county nor under an expansive arm-of-the-State test, it is subject to suit unless it was acting as an arm of the State, as delineated by this Court's precedents, in operating the drawbridge. *E.g., Alden, supra,* at 756. The County conceded below that it was not entitled to Eleventh Amendment immunity, and both the County and the Eleventh Circuit appear to have understood this concession to be based on the County's failure to qualify as an "arm of the State" under this Court's precedent. Moreover, certiorari was granted in this case premised on the conclusion that the County is not an arm of the State for Eleventh Amendment purposes, and this Court presumes that to be the case. The County's concession and this Court's presumption are dispositive. Pp. 3–5.

(b) The County's alternative argument that the Court should recognize a distinct sovereign immunity against *in personam* admiralty suits that bars cases arising from a county's exercise of core state functions with regard to navigable waters is rejected. Such recognition cannot be reconciled with the Court's precedents, which applied the general principle that sovereign immunity does not bar a suit against a city to an admiralty suit as early as *Workman* v. *New York City,* 179 U. S. 552, 570. The Court disagrees with the County's contention that *Workman* does not govern the instant case under *Ex parte New York,* 256 U. S. 490, 498, where, in extending sovereign immunity beyond cases "in law or equity" to admiralty cases, the Court concluded that *Workman* involved only substantive admiralty law, not the power of the Court to exercise jurisdiction over a particular defendant. But *Workman* did so precisely because the Court there held that admiralty courts have jurisdiction over municipal corporations. See 179 U. S., at 565. The *Workman* Court accordingly distinguished between the question before it—whether admiralty courts may, notwithstanding state law, "redress a wrong committed by one over whom such courts have adequate jurisdiction," *id.,* at 566, such as a municipal corporation—

Syllabus

and the question *not* before it, but before the Court in *Ex parte New York*—whether admiralty courts may "give redress in a case where jurisdiction over the person or property cannot be exerted," 179 U. S., at 566. In the former circumstance, the court should apply general admiralty principles, while in the latter the court lacks the power to do so. See *id.,* at 570; *Ex parte New York*, *supra*, at 499–500, 502–503. Because here, as in *Workman* and in contrast to *Ex parte New York*, the defendant was an entity generally within the District Court's jurisdiction, *Ex parte New York* is inapposite, and *Workman* compels the conclusion that the County is unprotected by sovereign immunity. Pp. 5–7.

129 Fed Appx. 602, reversed.

THOMAS, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

<span style="text-align:center">No. 04–1618</span>

## NORTHERN INSURANCE COMPANY OF NEW YORK, PETITIONER *v.* CHATHAM COUNTY, GEORGIA

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[April 25, 2006]

JUSTICE THOMAS delivered the opinion of the Court.

Petitioner Northern Insurance Company of New York (Northern) filed suit against respondent Chatham County, Georgia (County), in the United States District Court for the Southern District of Georgia, seeking damages resulting from an alleged tort committed by employees of the County. The District Court granted the County's motion for summary judgment on the ground that the suit was barred by sovereign immunity. Relying on Circuit precedent, the Court of Appeals for the Eleventh Circuit affirmed. We granted certiorari to consider "[w]hether an entity that does not qualify as an 'arm of the State' for Eleventh Amendment purposes can nonetheless assert sovereign immunity as a defense to an admiralty suit." 546 U. S. \_\_\_ (2005).

I

The County owns, operates, and maintains the Causton Bluff Bridge, a drawbridge over the Wilmington River. On October 6, 2002, James Ludwig requested that the bridge be raised to allow his boat to pass. The bridge malfunctioned, a portion falling and colliding with Mr. Ludwig's

boat. As a result of the collision, Mr. Ludwig and his wife incurred damages in excess of $130,000.

The Ludwigs submitted a claim for those damages to their insurer, Northern, which paid in accordance with the terms of their insurance policy. Northern then sought to recover its costs by filing suit in admiralty against the County in the District Court. The County sought summary judgment, arguing that Northern's claims were barred by sovereign immunity. The County conceded that Eleventh Amendment immunity did not extend to counties, but nonetheless contended that it was immune under "the universal rule of state immunity from suit without the state's consent." Defendant's Brief in Support of Motion for Summary Judgment, Case No. CV403–099, App. 33a. The District Court agreed, relying on *Broward County* v. *Wickman*, 195 F. 2d 614 (CA5 1952), to conclude that sovereign immunity extends to counties and municipalities that, as here, "exercis[e] power delegated from the State." *Zurich Ins. Co.* v. *Chatham County,* No. CV403–99, App. 77a.

The Eleventh Circuit, which was bound to follow *Wickman* as Circuit precedent, affirmed.[1] The Court of Appeals acknowledged that the County did not assert an Eleventh Amendment immunity defense, which would fail because, under Circuit precedent, the County did not qualify as an arm of the State. *Zurich Ins. Co.* v. *Chatham County,* No. 04–13308 (Jan. 28, 2005), App. 83a, n. 1, judgt. order reported at 129 Fed. Appx. 602. The Court of Appeals nonetheless concluded that "common law has carved out a 'residual immunity,' which would protect a political subdivision such as Chatham County from suit." App. 83a. We granted certiorari to review the judgment of the Court of Appeals. 546 U. S. ___ (2005).

———————

[1] See *Bonner* v. *Prichard*, 661 F. 2d 1206, 1209 (CA11 1981) (en banc) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

## II

This Court's cases have recognized that the immunity of States from suit "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments." *Alden* v. *Maine*, 527 U. S. 706, 713 (1999); see *Seminole Tribe of Fla.* v. *Florida*, 517 U. S. 44, 55–56 (1996); *Principality of Monaco* v. *Mississippi*, 292 U. S. 313, 322–323 (1934). Consistent with this recognition, which no party asks us to reexamine today, we have observed that the phrase "'Eleventh Amendment immunity' . . . is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden, supra,* at 713.

A consequence of this Court's recognition of pre-ratification sovereignty as the source of immunity from suit is that only States and arms of the State possess immunity from suits authorized by federal law. See *Alden, supra*, at 740; *Mt. Healthy City Bd. of Ed.* v. *Doyle*, 429 U. S. 274, 280 (1977). Accordingly, this Court has repeatedly refused to extend sovereign immunity to counties. See *Lake Country Estates, Inc.* v. *Tahoe Regional Planning Agency*, 440 U. S. 391, 401 (1979); *id.,* at 401, n. 19 (gathering cases); *Workman* v. *New York City*, 179 U. S. 552, 565 (1900); *Lincoln County* v. *Luning*, 133 U. S. 529, 530 (1890). See also *Jinks* v. *Richland County*, 538 U. S. 456, 466 (2003) ("[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit"). This is true even when, as respondent alleges here, "such entities exercise a 'slice of state power.'" *Lake Country Estates, supra*, at 401.

The County argues that this Court's cases recognize a distinct "residual" immunity that permits adoption of a broader test than we apply in the Eleventh Amendment

context to determine whether an entity is acting as an arm of the State and is accordingly entitled to immunity.[2] Brief for Respondent 28.  But this Court's use of that term does not suggest the County's conclusion; instead, this Court has referenced only the States' "residuary and inviolable sovereignty" that survived the Constitution. See The Federalist No. 39, p. 245 (C. Rossiter ed. 1961) (J. Madison); *Federal Maritime Comm'n* v. *South Carolina Ports Authority*, 535 U. S. 743, 751 (2002).

Because the County may claim immunity neither based upon its identity as a county nor under an expansive arm-of-the-State test, the County is subject to suit unless it was acting as an arm of the State, as delineated by this Court's precedents, in operating the drawbridge.  *Alden*, *supra*, at 756; *Lake Country Estates*, *supra*, at 400–401. The County conceded below that it was not entitled to Eleventh Amendment immunity, and both the County and the Court of Appeals appear to have understood this concession to be based on the County's failure to qualify as an arm of the State under our precedent.  See App. 83a, n. 1 (recognizing that the County rightly disclaimed an Eleventh Amendment immunity defense because such a defense would be inconsistent with the court's holding in *Vierling* v. *Celebrity Cruises, Inc.*, 339 F. 3d 1309 (CA11 2003), that the Broward County Port Authority was not an arm of the State); Brief of Appellee Chatham County in

——————

[2] It is unclear whether respondent believes that residual immunity is a common-law immunity that has been unaltered by federal substantive law, see Brief for Respondent 18 ("Chatham County's sovereign immunity derives from the common law which pre-dates Eleventh Amendment immunity"), or, as the Solicitor General appears to believe, a constitutionally based immunity that is distinguishable from the one drawn from the constitutional structure, see Tr. of Oral Arg. 16 ("What respondent calls residual sovereign immunity . . . is the doctrine of constitutional sovereign immunity").  In either case, it appears that the residual immunity would serve to extend sovereign immunity beyond its preratification scope.

No. 04–13308DD (CA11), p. 13 (distinguishing *Vierling* in part because it dealt with the question of Eleventh Amendment immunity); see also Brief for Respondent 8 (implicitly conceding that respondent is not an arm of the State under our Eleventh Amendment jurisprudence). Moreover, the question on which we granted certiorari is premised on the conclusion that the County is not "an 'arm of the State' for Eleventh Amendment purposes," 546 U. S. \_\_\_ (2005), and we presume that to be the case. Accordingly, the County's concession and the presumption underlying the question on which we granted review are dispositive.

As an alternative ground for affirmance, the County asks the Court to recognize a distinct sovereign immunity against *in personam* admiralty suits that bars cases arising from a county's exercise of core state functions with regard to navigable waters. Recognition of a distinct immunity in admiralty cases cannot be reconciled with our precedents. Immunity in admiralty, like other sovereign immunity, is simply an application of "the fundamental rule" that "the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given." *Ex parte New York*, 256 U. S. 490, 497–500 (1921). Accordingly, this Court has resolved sovereign immunity questions in admiralty by relying upon principles set out in this Court's sovereign immunity cases, rather than by examining the history or jurisprudence specific to suits in admiralty. See *Federal Maritime Comm'n* v. *South Carolina Ports Authority*, *supra,* at 754–769 (an admiralty suit relying heavily on *Alden*, *supra* (plaintiff raised a Fair Labor Standards Act of 1938 claim), and *Seminole Tribe of Fla.* v. *Florida*, 517 U. S. 44 (1996) (plaintiff alleged violation of the Indian Gaming Regulatory Act)). Indeed, the Court applied the general principle that sovereign immunity does not bar a suit against a city to an admiralty suit

as early as *Workman* v. *New York City*, 179 U. S. 552, which held that such immunity "afforded no reason for denying redress in a court of admiralty for the wrong which . . . [had] been committed" by the city of New York, *id.,* at 570.

The County nonetheless contends—and the Eleventh Circuit, in reliance upon the Fifth Circuit's analysis in *Wickman*, held—that the reach of *Workman* is limited, and that this Court's decision in *Ex parte New York*, *supra,* demonstrates that *Workman* does not govern the instant case. See *Wickman*, 195 F. 2d, at 615. We disagree. *Ex parte New York* extended sovereign immunity beyond cases "in law or equity" to cases in admiralty. As the County points out, *Ex parte New York* concluded that *Workman* involved only the substantive law of admiralty, and not the power of the Court to exercise jurisdiction over a particular defendant. *Ex parte New York*, *supra*, at 498. But *Workman* dealt only with the substantive law of admiralty precisely because the *Workman* Court held that admiralty courts have jurisdiction over municipal corporations. See 179 U. S., at 565 ("[A]s a general rule, municipal corporations, like individuals, may be sued; in other words . . . they are amenable to judicial process for the purpose of compelling performance of their obligations"). The *Workman* Court accordingly distinguished between the question before it—whether courts of admiralty may, notwithstanding state law, "redress a wrong committed by one over whom such courts have adequate jurisdiction," *id.,* at 566, such as a municipal corporation—and the question *not* before it, but before the Court in *Ex parte New York*— whether courts of admiralty may "give redress in a case where jurisdiction over the person or property cannot be exerted," 179 U. S., at 566. In the former circumstance, the court should apply general admiralty principles, while in the latter the court lacks the power to do so. See *id.,* at 570; *Ex parte New York*, *supra*, at 499–500, 502–503. Because

here, as in *Workman* and in contrast to *Ex parte New York*, the defendant was an entity generally within the jurisdiction of the District Court, *Ex parte New York* is inapposite, and *Workman* compels the conclusion that the County is unprotected by sovereign immunity.

\*　\*　\*

Because the County has failed to demonstrate that it was acting as an arm of the State when it operated the Causton Bluff Bridge, the County is not entitled to immunity from Northern's suit. Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*