[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14182 & 13-14927
_____

D.C. Docket No. 2:13-cv-00524-RDP


DARRYL WALKER, et al.,

Plaintiffs-Appellants,

versus

JEFFERSON COUNTY BOARD OF EDUCATION, et al.,

Defendants-Appellees.


_____

No. 13-14624
_____

D.C. Docket No. 5:11-cv-03558-TMP


MICHAEL WEAVER,

Plaintiff-Appellee,

versus

MADISON CITY BOARD OF EDUCATION, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

(November 4, 2014)

Before ED CARNES, Chief Judge, and JORDAN and ROSENBAUM, Circuit Judges.

JORDAN, Circuit Judge:

In these consolidated appeals—*Walker* and *Weaver*—the Jefferson County Board of Education and the Madison City Board of Education ask us to recede from our opinion in *Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499, 1511 (11th Cir. 1990), which held that school boards in Alabama are not arms of the state and therefore not entitled to Eleventh Amendment immunity. With the benefit of oral argument, we conclude that the Eleventh Amendment ruling in *Stewart* has not been overruled or abrogated, and therefore remains binding precedent.

**I**

We begin with a summary of the proceedings in *Walker* and *Weaver.*

In *Walker*, a number of so-called 240-day employees sued the Jefferson County Board of Education, alleging that the Board's practice of dividing their annual salaries by 260 days to obtain their hourly and overtime rates violated the

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*  The *Walker* plaintiffs sought to recover wrongfully calculated wages, withheld wages, unpaid wages, overtime compensation, and liquidated damages.

The district court in *Walker* granted the Jefferson County Board's motion to dismiss.  It held that the Board was an arm of the state and therefore entitled to assert Eleventh Amendment immunity from suit.  In so ruling, the district court concluded that *Stewart* did not constitute binding precedent.  Relying on *Versiglio v. Bd. of Dental Exam'rs of Ala.*, 686 F.3d 1290, 1291 (11th Cir. 2012) (*Versiglio II*), the district court looked to decisions of the Alabama Supreme Court declaring that school boards have sovereign immunity under the Alabama Constitution from suits based on state tort and contract law.  Like the panel in *Versiglio II*, the district court declined to interpret Alabama law in a way that it believed was diametrically opposed to the decisions of the Alabama Supreme Court. *See Walker v. Jefferson Cnty. Bd. of Educ.,* No. 2:13-CV-00524-RDP, 2013 WL 4056224, at *1 (N.D. Ala. Aug. 12, 2013); *Walker v. Jefferson Cnty. Bd. of Educ.*, No. 2:13-CV-00524-RDP, Order Denying Relief from Judgment [D.E. 26] at 2-5 (N.D. Ala. Oct. 4, 2013). The plaintiffs appeal from that ruling.

The plaintiff in *Weaver*, a member of the United States Army Reserve, sued his former employer, the Madison City Board of Education, alleging that after his nearly two-year tour of duty in Afghanistan, the Board refused to reinstate him to

his prior position.  He claimed that, by reducing his responsibilities, status, and salary upon his return from active duty service, the Board violated the Uniform Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq.*

The district court in *Weaver* denied the Madison City Board's motion to dismiss on Eleventh Amendment grounds.  It ruled that our decision in *Stewart* was binding and, alternatively, that the result would be the same even if *Stewart* were not controlling.  *See Weaver v. Madison City Bd. of Educ.,* 947 F. Supp. 2d 1308, 1314-24 (N.D. Ala. 2013).  The Board appeals from that decision.

## II

The Eleventh Amendment, as interpreted by the Supreme Court, generally provides that Article III's jurisdictional grant did not and does not limit the sovereign immunity that states enjoyed when they joined the Union. *See generally Va. Office for Prot. & Advocacy v. Stewart,* 131 S. Ct. 1632, 1637 (2011).  This immunity from suit is available "only" to states and arms of the states.  *See N. Ins. Co. of N.Y. v. Chatham Cnty., Ga.,* 547 U.S. 189, 193 (2006) (holding that county could not assert Eleventh Amendment immunity because it was not acting as an arm of the state when it operated a drawbridge that it owned).  *See also Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.,* 715 F.3d 1268, 1289 (11th Cir. 2013) ("Odebrecht has no monetary recourse against a state agency like FDOT because of the Eleventh Amendment."). The Boards contend that they are entitled to

4

Eleventh Amendment immunity as arms of the state of Alabama, and insist that our 1990 decision in *Stewart* is no longer good law.

*Stewart* involved a claim against an Alabama county board of education (and others) under 42 U.S.C. § 1983 by a former employee alleging that he was fired for exercising his First Amendment rights. The district court denied the school board's motion for summary judgment, and the school board appealed, arguing that it was entitled to absolute immunity under the Eleventh Amendment. 908 F.2d at 1508. We declined to address whether the denial of Eleventh Amendment immunity was immediately appealable under the collateral order doctrine, and instead exercised our discretion to entertain the Eleventh Amendment immunity question under the doctrine of pendent appellate jurisdiction. *Id.* at 1509.[1]

Turning to the merits, we applied a three-factor test to determine whether the school board enjoyed Eleventh Amendment immunity under federal law. We framed the test as follows: "(1) how the state law defines the entity; (2) the degree of state control over the entity; and (3) the entity's fiscal autonomy—i.e., where the entity derives its funds and who is responsible for judgments against the entity." *Id.*

---

[1] The Supreme Court later held that the denial of Eleventh Amendment immunity is immediately appealable pursuant to the collateral order doctrine. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 141 (1993).

5

That test, in conjunction with relevant Supreme Court and Eleventh Circuit precedent, led us to conclude in *Stewart* that the school board could not assert Eleventh Amendment immunity. First, the Supreme Court, looking in part to state law, had held in *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1977), that an Ohio school board was not entitled to Eleventh Amendment immunity, as it was more like a county or city than an arm of the state. *Stewart,* 908 F.2d at 1509-10. Second, we had previously denied Eleventh Amendment immunity to school boards in Florida, Mississippi, and Louisiana because those entities had a substantial amount of control over their own affairs and the means to raise funds, so that any adverse judgments could be paid out of local funds. *Id.* at 1510 (citing cases). Third, the fact that "Alabama state courts provide[d] county boards of education with sovereign immunity in state tort law actions d[id] not require a similar treatment under the Eleventh Amendment," as it was improper to "conflate sovereign immunity with regard to a state-created tort with Eleventh Amendment immunity for a federal cause of action." *Id.* at 1510 n.6. Fourth, school boards in Alabama possessed a "significant amount of flexibility in raising local funding," including the ability to raise revenues by selling interest-bearing tax anticipation warrants. *Id.* at 1510. As a result, "it c[ould not] be said that a judgment against a county school board w[ould] come from state funds." *Id.* at 1510-11. Fifth, those school boards had the power to establish general education policy, and the

6

authority to assign teachers and place students. *Id.* at 1511. Finally, at least four district courts in Alabama had denied Eleventh Amendment immunity to school boards in that state. *Id.*[2]

## III

Once a panel of this court decides an issue, its holding on that issue is binding on all subsequent panels, "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." *United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010) (italics omitted). And that is the rule even if the prior panel failed to consider certain arguments or contentions. "[W]e have categorically rejected an overlooked reason or argument exception to the prior precedent rule." *United States v. Johnson*, 528 F.3d 1318, 1320 (11th Cir. 2008) (citing cases), *rev'd on other grounds*, 559 U.S. 133 (2010).

## A

A Supreme Court decision abrogates one of our prior cases only if it is "clearly on point." *United States v. Lawson*, 686 F.3d 1317, 1319 (11th Cir. 2012). The Supreme Court has not decided any cases that abrogate *Stewart*, and *Mt. Healthy*—its one decision on the Eleventh Amendment immunity of a local school board—is still good law today, as it continues to be cited favorably by the Court.

---

[2]We followed *Stewart* in *Kendrick v. Jefferson Cnty. Bd. of Educ.,* 932 F.2d 910, 914 (11th Cir. 1991), and denied Eleventh Amendment immunity to an Alabama county school board sued under federal law.

*See N. Ins. Co. of N.Y.,* 547 U.S. at 193; *Alden v. Maine,* 527 U.S. 706, 756 (1999); *Missouri v. Jenkins*, 495 U.S. 33, 56 n.20 (1990).

Our circuit, moreover, has not overruled *Stewart* through an en banc decision. Indeed, the Eleventh Amendment test articulated in *Stewart* remains the law of the circuit, though the third *Stewart* factor (the entity's fiscal autonomy—i.e., where the entity derives its funds and who is responsible for judgments against the entity) has now been subdivided into a third factor (where the entity derives its funds) and a fourth factor (who is responsible for judgments against the entity). *See, e.g., Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc); *Ross v. Jefferson Cnty. Dep't of Health,* 701 F.3d 655, 660-61 (11th Cir. 2012).[3]

**B**

We have recognized that "[i]f state law changes or is clarified in a way that is inconsistent with the state law premise of one of our earlier decisions, the prior panel precedent rule does not bind us to follow our earlier decision." *Johnson,* 528 F.3d at 1320. The Boards believe that Alabama law has changed significantly with respect to how school boards are characterized, and that as a result *Stewart* is no longer binding.

---

[3]We therefore do not address whether (or how) the prior panel precedent rule applies when one or more factors of a multi-factor test have changed.

8

Quoting one of our recent cases, the Boards begin by pointing out that whether an entity "qualifies as an arm of the state is a federal question with a federal standard, but whether that standard is met will be determined by carefully reviewing how the [entity] is defined by state law." *Versiglio II,* 686 F.3d at 1291. In that case the panel initially ruled that, "[d]espite the strength of [its] claim" to Eleventh Amendment immunity under our four-factor test, the Alabama Board of Dental Examiners did not enjoy such immunity because one factor "weigh[ed] heavily" against it: the Alabama Court of Civil Appeals had ruled that the Board of Dental Examiners was not entitled to sovereign immunity under state law. *See Versiglio v. Bd. of Dental Exam'rs of Ala.,* 651 F.3d 1272, 1276-77 (11th Cir. 2011) (*Versiglio I*). The *Versiglio I* panel thought it would be wrong to rule on Eleventh Amendment immunity in a way that was "diametrically opposed" to the ruling of the Alabama Court of Civil Appeals on state sovereign immunity. *Id.* at 1277.

The *Versigilio I* panel later granted rehearing, vacated *Versiglio I*, and ruled that the Board of Dental Examiners was entitled to Eleventh Amendment immunity from a claim asserted under the FLSA. It did so because, after issuance of the initial panel opinion, the Alabama Supreme Court ruled that the Board of Dental Examiners was a state agency that was immune from a breach of contract suit based on state law. *See Versiglio II,* 686 F.3d at 1292. The *Versiglio II* panel

9

explained that it did not want to have "the incongruous result of having a 'state agency' that is immune from suit under state law but not federal law." *Id.* It concluded by saying that we "give[ ] great deference to how state courts characterize the entity in question," and that "[t]his practice is in keeping with the ordinary deference granted state courts when they interpret matters of state concern." *Id.* at 1292-93.

## C

We have no quarrel with the general proposition, as expressed in *Versiglio II*, that how state law defines an entity is significant for purposes of the Eleventh Amendment. *See Mt. Healthy,* 429 U.S. at 280 ("The answer depends, at least in part, upon the nature of the entity created by state law."). *Accord Manders,* 338 F.3d at 1309 ("Given these [four] factors, the resolution of the Eleventh Amendment issue . . . depends, in part, on state law."). But we do not think this proposition helps the Boards here.

The Alabama Supreme Court ruled in 2009 and again in 2012 that county school boards enjoy sovereign immunity, under § 14 of the Alabama Constitution, from suits based on state tort or contract law. *See Ex Parte Hale Cnty. Bd. of Educ.,* 14 So. 3d 844, 848 (Ala. 2009) ("Because county boards of education are local agencies of the [s]tate, they are clothed in constitutional immunity from suit[.]"); *Ex Parte Montgomery Cnty. Bd. of Educ.,* 88 So. 3d 837, 841 (Ala. 2012)

("It is well settled in Alabama that '[l]ocal school boards are agencies of the state, and not of the local governmental units they serve, and they are entitled to the same absolute immunity as other agencies of the state.'") (citation omitted).  As the Boards see it, the Alabama Supreme Court's decisions in *Hale County* and *Montgomery County* require us to revisit our ruling in *Stewart*, and under *Versiglio II* we should overrule *Stewart* so that we do not have the incongruous situation of having Alabama school boards enjoying sovereign immunity under state law but being denied Eleventh Amendment immunity under federal law.  *Versiglio II*, however, is not as sweeping as the Boards think.

First, the Boards' suggestion that our 2012 decision *Versiglio II* can be read as collapsing the entire Eleventh Amendment multi-factor test into a single dispositive inquiry—whether the state courts grant state law immunity to the entity for suits based on state law—conflicts not only with our 1990 decision *Stewart*, but also with our 2003 en banc decision in *Manders*.  As the district court in *Weaver* explained, "[h]ow the state courts treat an entity is only one part of the first factor of the *Stewart* and *Manders* analysis.  Within the first factor the court also weighs how state statutes treat the particular entity."  *Weaver,* 947 F. Supp. 2d at 1311 (emphasis and footnote omitted).  We decline to read *Versiglio II* in a way which violates our prior panel precedent rule and creates interpretive problems for panels in the future.  *See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC,* 369 F.3d

11

1197, 1208 n.13 (11th Cir. 2004) (refusing, given prior panel precedent rule, to modify multi-factor test previously established by circuit). *See also United States v. Mozie*, 752 F.3d 1271, 1285 (11th Cir. 2014) ("Under the prior panel precedent rule, when two of our decisions conflict, we are obligated to follow the earlier one."); *Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251, 1256 (11th Cir. 2014) ("[W]hen faced with an intracircuit split, we look to the *earliest* case not abrogated by the Supreme Court or by this Court sitting en banc.").[4]

Second, at the time we decided *Stewart*, Alabama courts had already held that school boards were state entities entitled to sovereign immunity from tort suits based on state law. *See, e.g., Brown v. Covington Cnty. Bd. of Educ.*, 524 So. 2d 623, 625 (Ala. 1988). Although we recognized that principle of state sovereign immunity law in *Stewart*, we did not find it determinative, and held that Alabama school boards could not assert Eleventh Amendment immunity:

> That Alabama state courts provide county boards of education with sovereign immunity in state tort law actions does not require a similar treatment under the Eleventh Amendment. The Supreme Court's resolution in *Mt. Healthy* is instructive. At the time that *Mt. Healthy* was decided, the case law in Ohio was clear that a local

---

[4] In declining to follow *Stewart*, the district court in *Walker* relied in part on *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.,* 625 F.2d 22, 24 (5th Cir. 1980) (stating that whether an entity is a "'second self' of the state or a 'separate and distinct' entity subject to suit 'must be determined by the law of the state'") (citation omitted). To the extent that *Huber* held that Eleventh Amendment immunity is governed solely by how state law characterizes an entity, it has been superseded by the later en banc decision in *Manders*, 338 F.3d at 1309 (setting out four-part Eleventh Amendment immunity test).

school board was cloaked in sovereign immunity to the same degree as the state itself[.]

*Stewart*, 908 F.2d at 1510 n.6 (citing cases). We closed by saying that the school board's "attempt to conflate [state] sovereign immunity with regard to a state-created tort with Eleventh Amendment immunity for a federal cause of action is unavailaing." *Id.*

Given decisions like *Brown*, the Alabama Supreme Court's 2009 decision in *Hale County* and 2012 decision in *Montgomery County* do not constitute new pronouncements of Alabama law on the question of the state sovereign immunity enjoyed by local school boards, and did not permit our *Versigilio II* decision to implicitly overrule or prior decision in *Stewart.* They likewise do not provide a basis for us to conclude that *Stewart* has been abrogated. *Cf. Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 377-78 (1990) ("To the extent that the [state] law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law."). We note, as well, that the Alabama courts do not view state sovereign immunity and Eleventh Amendment immunity as one and the same. *See Ex Parte Ala. Dep't of Youth Servs.*, 880 So. 2d 393, 404 (Ala. 2003) ("State law sovereign immunity is relevant [in the Eleventh Amendment context] only as it indicates whether the state considers the entity to be part of the state. It is at best only a rough, overly

13

inclusive gauge of the arm-of-the-state status under the Eleventh Amendment[.]")
(citation omitted).

## D

Even assuming that *Versiglio II* now requires us to give more weight to how state courts treat the entity in question, the Boards' attempt to sink *Stewart* with a *Versiglio II* broadside fares no better. The problem for the Boards is *Ex Parte Madison Cnty. Bd. of Educ.,* 1 So. 3d 980, 989-90 (Ala. 2008), a post-*Stewart* case in which the Alabama Supreme Court held that a local school board is "not an arm of the [s]tate for the purposes of § 1983 liability and is not entitled to Eleventh Amendment immunity." In coming to this conclusion, the Alabama Supreme Court—which like any state court is generally presumed competent to interpret and apply federal law, *see Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290, 1301 (11th Cir. 2008)—did not just defer to our decision in *Stewart.* Instead, it correctly recognized that Eleventh Amendment immunity is a question of federal law, and independently applied our *Manders* test over the course of several pages, ultimately concluding that "application of [that] test to the facts before us does not support a finding that the [school board] has established a right to Eleventh Amendment immunity." *Madison County,* 1 So. 3d at 987-89.

With respect to the first factor of the test, which asks how state law characterizes school boards, the Alabama Supreme Court in *Madison County*

14

explained that a school board's members are elected by voters in the relevant county; that a school board determines its own educational policy and prescribes rules and regulations for the schools in its jurisdiction; that a school board may suspend or dismiss superintendents, principals, teachers, and other employees; and that a school board may transfer teachers as needed to different schools or grades. *Id.* at 987-88.  Thus, the Alabama Supreme Court held that the first factor "len[t] little weight to the [school board] being considered an 'arm of the [s]tate' and thereby entitled to Eleventh Amendment immunity." *Id.* at 988.

As for the second factor of the test, which looks at the degree of control asserted by the state, the Alabama Supreme Court concluded in *Madison County* that "the legislature . . . specifically vested in county boards of education the authority to transfer, suspend, or dismiss teachers[.]" *Id.*  As a result, this "second factor d[id] not weigh in favor of the [b]oard's being considered an 'arm of the [s]tate' and thereby entitled to Eleventh Amendment immunity." *Id.*

The third and fourth factors (where the board of education derives its funds and who is responsible for judgments against the board) also did not weigh in favor of according Eleventh Amendment immunity.  The Alabama Supreme Court ruled that the school board failed to explain from where it derived its funds, and further failed to provide any evidentiary support for its assertion that any judgment against it would be paid from the state treasury. *Id*.

15

*Madison County* is the Alabama Supreme Court's latest word on whether local school boards are entitled to Eleventh Amendment immunity for federal causes of action, and its ruling on that issue is consistent with (and identical to) our ruling in *Stewart*.  So, even if we were to read *Versigilio II* as broadly as the Boards urge us to do, and look to the more recent decisions of the Alabama Supreme Court for definitive guidance on the Eleventh Amendment question before us, the result would be the same.  Simply stated, we do not create an incongruous result by adhering to our *Stewart* decision because the Alabama Supreme Court's *Madison County* decision agrees with *Stewart* that, with respect to employment decisions, a local school board in Alabama is not an arm of the state for purposes of Eleventh Amendment immunity.  *See Madison County,* 1 So. 3d at 988-89 (explaining that local school boards have statutory authority to transfer, suspend, or dismiss teachers and employees).  *See also* Ala. Code § 16-11-17 ("The city board of education shall fix the salaries of all employees and may suspend or dismiss any principal or teacher or supervisor or attendance officer or other regular employee so appointed on the written recommendation of the city superintendent of schools for immorality, misconduct in office, incompetency, willful neglect of duty or when, in the opinion of the board, the best interests of the schools may require[.]"); Ala. Code § 16-8-23 ("The county board [of education] may suspend or dismiss for immorality, misconduct in office, insubordination,

16

incompetency or willful neglect of duty, or whenever, in the opinion of the board, the best interests of the school require it, superintendents, principals, teachers or any other employees or appointees of the board[.]").[5]

## E

At oral argument, counsel for the Boards represented that the decision to compensate employees based upon an allegedly illegal formula in *Walker* was made by the state of Alabama, which had assumed control of the Jefferson County Board of Education pursuant to a state financial intervention law. We do not know if this factual assertion is correct or not, because the necessary information is not in the record. We therefore do not address it. On remand the parties are free to pursue discovery on this issue, and to make whatever arguments they deem appropriate to the district court in their summary judgment filings.

## III

"Whether [an entity] is an 'arm of the [s]tate' must be assessed in light of the particular function in which the [entity] was engaged when taking the actions out of which liability is asserted to arise." *Manders,* 338 F.3d at 1308. Both of the

---

[5]The Boards may think that the Alabama Supreme Court's decisions denying Eleventh Amendment immunity but granting state sovereign immunity to local school boards are schizophrenic, but the "Supreme Court has repeatedly recognized that sovereign immunity is a flexible defense with multiple aspects that states can independently relinquish without affecting others." *Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013). And, as we have explained, the Alabama courts do not view Eleventh Amendment immunity and state sovereign immunity as coterminous concepts. *See Ala. Dep't of Youth Servs.*, 880 So. 2d at 404.

17

cases before us concern employment-related decisions (i.e., hiring, assignment, and compensation), and under *Stewart,* 908 F.2d at 1509-11, local school boards in Alabama are not arms of the state with respect to such decisions.  Accordingly, the Jefferson County Board of Education and the Madison City Board of Education are not immune under the Eleventh Amendment from suits challenging those decisions under federal law. The district court's dismissal of the complaint in *Walker* is reversed, and the district court's denial of the motion to dismiss in *Weaver* is affirmed.

**REVERSED and REMANDED in *Walker,* and AFFIRMED in *Weaver.***