NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0125n.06

Case No. 19-5660

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

KAREN McNEIL, LESLEY JOHNSON, ) 
TANYA MITCHELL, INDYA HILFORT, ) 
LUCINDA BRANDON, on behalf of ) 
themselves and all others similarly situated, ) 
                   ) 

FILED
Feb 28, 2020
DEBORAH S. HUNT, Clerk

     Plaintiffs-Appellees, ) 
                   ) 
v. ) 
                   ) 
COMMUNITY PROBATION SERVICES, ) 
LLC; PATRICIA McNAIR; COMMUNITY ) 
PROBATION SERVICES, L.L.C., ) 
COMMUNITY PROBATION SERVICES, ) 
                   ) 
     Defendants-Appellants. ) 

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

---

BEFORE: COLE, Chief Judge; BOGGS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. This appeal arises out of a lawsuit challenging the way Giles County, Tennessee determines bail, privatizes probation supervision, and collects related fees. Last time we tangled with this litigation, the sheriff and county appealed a preliminary injunction stemming from the bail-focused claims against them. *McNeil v. Cmty. Prob. Servs.*, 945 F.3d 991 (6th Cir. 2019). This time, a probation company and one of its employees appeal the denial of their motion for summary judgment, raising several immunities. We affirm.

Giles County contracts with two private probation companies to supervise the probation of people it convicts of misdemeanors. A putative class of misdemeanants sued both companies,

some employees of each company, the county, and the county sheriff. They allege that the defendants have committed federal constitutional violations, federal racketeering violations, and state-law torts. The plaintiffs seek injunctions to stop the companies' continued operation and damages for what has already happened.

This appeal involves just one company and one employee. Community Probation Services and probation officer Patricia McNair raise qualified-immunity and sovereign-immunity defenses. We have authority over the appeal because denials of anti-suit immunities receive immediate appellate review. *See Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985).

*Qualified immunity.* Qualified immunity partially, though not completely, protects government employees from personal liability for their official actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In invoking this defense, the company and McNair trip over the reality that they face no prospect of damages liability.

Start with the company. The complaint does not contain an individual-capacity claim against the company. Nor does any feature of the "course of proceedings," *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001) (en banc), suggest a different conclusion about the company's potential exposure to damages. On top of that, the plaintiffs have represented repeatedly and expressly that they do not seek to hold the company individually liable for damages.

This case looks like *Rodgers v. Banks*, 344 F.3d 587 (6th Cir. 2003), except it is easier. There, the plaintiff sought compensatory and punitive damages, but the complaint stated that the defendant was being sued in his official capacity. *Id.* at 594. The plaintiff amended the complaint and did not change anything relevant to the capacity in which it sued the defendant. *Id.* We concluded that the lawsuit targeted the defendant in his official capacity and thus did not expose him to individual liability. *Id.* at 595. The same is more true here because the plaintiffs have

repeatedly assured the company that it has no risk of individual liability.

What should we make of the reality, the company counters, that the plaintiffs seek punitive damages? It's true that punitive damages are not available against counties. And it's true that in some instances courts have treated a request for punitive damages as an indication that a suit seeks individual liability. *See Jarrett v. Town of Yarmouth*, 331 F.3d 140, 145–46 (1st Cir. 2003). But none of this alters the equation, given the plaintiffs' express representations that the company faces no liability.

Even so, the company adds, what should we make of a second reality—that the plaintiffs have amended their complaint twice and have yet to clarify that the company does not face money damages? That is true. But it does not alter what they have clarified—that in four separate filings they have insisted that they do not seek damages from the company. Judicial estoppel would prohibit any change of heart now.

Now consider McNair. She seeks "qualified immunity on all § 1983 damages claims brought against [her]." Appellant Br. 13. In response, the plaintiffs represent that they have not asserted any § 1983 claims against McNair. There is good reason to take their word for it. A review of the complaint confirms as much. Not a single § 1983 claim against McNair appears in it.

McNair worries that two features of the complaint cast doubt on this conclusion. She points out that the complaint says she is being sued in her individual and official capacities. But that language alone does not create a § 1983 claim, especially in the face of the plaintiffs' disavowal of such a claim. On top of that, she points out that § 1983 could be the underlying cause of action in Counts 19 and 20, which assert "abuse of process" claims against McNair (and others) and say that McNair acted "under color of state law as defined by 42 U.S.C. § 1983." R. 256 at 122–23.

But abuse of process is "a tort for which [Tennessee] ha[s] long recognized a remedy," *Givens v. Mullikin*, 75 S.W.3d 383, 400 (Tenn. 2002), and we accept plaintiffs' representation that they have pursued McNair under state, not federal, law.

All in all, the plaintiffs have not filed individual-capacity § 1983 claims against the company or McNair. No qualified-immunity defense thus applies to them for such claims.

*Sovereign immunity.* The company argues that, if any claims target it in its official capacity, sovereign immunity bars money damages relief. Sovereign immunity, however, protects States, not counties. *N. Ins. Co. v. Chatham County*, 547 U.S. 189, 193–94 (2006). The question, then, is whether the company acts for the State or the county.

In our circuit, six considerations inform the inquiry: Is the State or the county the true source of the challenged action? *Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015). Some factors, however, are more important than others. The key consideration—who pays any judgment?—predominates. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994). In this instance, no one claims that the State, as opposed to the county, would pay any judgment. That puts the company in the hole to start. Things do not improve from there.

Another consideration is who handles misdemeanor probation in Tennessee. A state statute assigns responsibility for misdemeanor probation supervision to counties. Tenn. Code Ann. § 40-35-302(f)(1). That suggests that the county, not the State, would pay any judgment.

A third inquiry looks to who appoints the probation company. Agents of the State screen potential probation companies to make sure they comply with state statutory requirements. *Id.* § 40-35-302(g)(1)(A)(ii), (g)(1)(D)–(F). But counties decide which approved company or companies to contract with. That is at best a draw.

4

A fourth inquiry asks who pays the company: the State or the county? Because the company does not receive public funds, this consideration does not point in either direction.

A fifth inquiry asks how much control the State exerts over the company. On the one hand, state statutes permit private probation companies to operate and set out general requirements for them. *See* Tenn. Code Ann. §§ 40-35-302, 40-35-303. Companies report to a dedicated state agency, and the agency regulates probation companies statewide. *See id.* § 16-3-901 *et seq.* On the other hand, counties have broad control over the terms of their contracts with probation companies. And in this particular contract, the county may terminate its relationship with the company for any reason—a powerful source of control—and may audit the company at any time. This consideration, too, does not point in either direction.

A sixth inquiry asks how state courts and statutes refer to private probation companies. But it does not add anything new. Tennessee does not refer to private probation companies as acting for the State or county.

All factors considered, Tennessee private probation companies do not act for the State and thus may not invoke Tennessee's sovereign immunity in this lawsuit. Reinforcing this conclusion is a more concrete reality: We know of no case in which a private probation company has successfully invoked sovereign immunity.

*Witness and quasi-judicial immunity.* That leaves a few loose ends. The company and McNair devote two sentences to arguing their entitlement to witness immunity. And they dedicate a single paragraph, mostly a block quotation, to quasi-judicial immunity. But they do not explain which claims these immunities would foreclose or why they would apply. Both arguments are forfeited due to insufficient development.

We affirm.

5