NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0079n.06

Case No. 21-1108

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Feb 22, 2022
DEBORAH S. HUNT, Clerk

THOMAS A. FOX, and all those similarly situated,

    Plaintiff-Appellee,

v.

SAGINAW COUNTY, MICHIGAN, by its Board of Commissioners, et al.,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

O P I N I O N

BEFORE: GUY, COLE, and STRANCH, Circuit Judges.

COLE, Circuit Judge. Thomas Fox, the class representative to this class action, alleges that twenty-seven Michigan counties unlawfully retained the surplus equity in class members' foreclosed properties without compensation, in violation of the Takings Clauses of the Michigan and United States Constitutions. The counties appeal the district court's partial denial of their motions to dismiss on the grounds that the counties are not entitled to sovereign immunity. The counties additionally argue that the district court erred in finding that plaintiff Fox had "juridical link" standing to represent the class, including those plaintiffs with claims against dozens of Michigan counties that never directly injured Fox. Finally, the counties argue that the district court erred in finding that Fox adequately pleaded a Fifth Amendment takings claim on behalf of the

class under 42 U.S.C. § 1983. Because the counties are not entitled to sovereign immunity, and we lack jurisdiction to review the counties' other arguments, we affirm.

## I. BACKGROUND

### A. Factual Background

Thomas Fox was a property owner in Gratiot County, Michigan. By 2017, Fox had accrued a tax delinquency of over $3,000 on the property, which had an alleged fair market value of $50,400. In February 2017, Gratiot County "seized ownership of the Property," and sold it at auction for more than the value of Fox's tax delinquency as it was entitled to do under Michigan law.

Gratiot County was not required to foreclose on Fox's property. Michigan's General Property Tax Act ("the Act"), Mich. Comp. Laws § 211.78 *et seq*., provides that "[t]he foreclosure of forfeited property by a county is voluntary and is not an activity or service required of units of local government[.]" Mich. Comp. Laws § 211.78(6). Foreclosures are initiated by a "foreclosing governmental unit" ("FGU"). Either "[t]he treasurer of a county" or the State of Michigan "if the county . . . elected . . . to have [Michigan] foreclose property under this act" can act as an FGU. *Id.* § 211.78(8)(a).

Counties initially had to decide whether to opt-out of becoming an FGU and instead elect to have Michigan foreclose real property "no[] later than December 1, 1999[.]" *Id.* § 211.78(3). In December 2004, counties had the opportunity to reconsider their status. *Id.* This was, by statute, the final chance for counties to opt-out of becoming an FGU. From January 1, 2009, through March 1, 2009, counties could reconsider their status and opt-in to becoming FGUs, but not opt-out. *Id.* § 211.78(4). After 2010, counties could opt-in to becoming an FGU in any given year after February of the following year "by a resolution adopted at a meeting held pursuant to the

open meetings act, 1976 PA 267, MCL 15.261 to 15.275, and with the written concurrence of the county treasurer and county executive[.]" *Id.* § 211.78(5). As of 2019, "[75] of Michigan's 83 counties elect[ed] to act as the [FGU.]" *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 442 n.11 (Mich. 2020) (citation omitted).

Once a county—like Gratiot—decides to foreclose on a property, the Act regulates the entire process, including what an FGU may do with the funds from the sale. *See* Mich. Comp. Laws § 211.78m; *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 824 (6th Cir. 2017) (Kethledge, J., dissenting) ("[T]he Michigan Act appears actually to *require* the County to short the taxpayer the difference between the value of the property forfeited and the amount of taxes and penalties owed.")

At the time of Fox's foreclosure, the Act provided:

(8) A foreclosing governmental unit *shall* deposit the proceeds from the sale of property under this section into a restricted account designated as the "delinquent tax property sales proceeds for the year _____". The foreclosing governmental unit shall direct the investment of the account. The foreclosing governmental unit shall credit to the account interest and earnings from account investments. Proceeds in that account *shall only* be used by the foreclosing governmental unit for the following purposes in the following order of priority:

(a) The delinquent tax revolving fund shall be reimbursed for all taxes, interest, and fees on all of the property, whether or not all of the property was sold.

. . .

(h) . . . All or a portion of any remaining balance, less any contingent costs of title or other legal claims described in subdivisions (a) through (f), may subsequently be transferred into the general fund of the county by the board of commissioners.

Mich. Comp. Laws § 211.78m(8) (2015) (emphasis added). In Fox's case, Gratiot County retained the surplus funds as was required by the Act. *See id.* Fox contends that by retaining the funds, Gratiot County "took or destroyed" his equity in the property, and that other Michigan counties engaged in the same practice, harming other Michigan residents.

B. **Procedural History**

On June 25, 2019, Fox filed a complaint on behalf of himself and all others similarly situated against Gratiot County and several other Michigan counties and county treasurers in their individual and official capacities, seeking damages based on the counties' retention of surplus proceeds from tax foreclosure sales. On September 4, 2019, Fox filed an amended complaint that named more counties and county treasurers as defendants and brought three additional claims against them. In total, Fox brought eight claims against the county defendants, alleging that the destruction of his and other class members' equity was an unconstitutional taking under Michigan and federal law, that the retention of the surplus proceeds constituted an inverse condemnation of their property, that the class members' procedural and substantive due process rights were violated, and that the county defendants were unjustly enriched through this process.

On January 10, 2020, the district court stayed the case pending a decision from this court in *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020), which the district court believed presented nearly identical facts, substantive arguments, and jurisdictional questions. On July 17, 2020, the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland County*, and concluded that the "retention of [] surplus proceeds under the [Act] amounts to a taking of a vested property right," in violation of the Michigan Constitution's takings clause, Mich. Const. art. 10, § 2. 952 N.W.2d at 474, 477. On September 30, 2020, we decided *Freed*, concluding that neither the Tax Injunction Act nor principles of comity precluded an action against Michigan counties for surplus proceeds retained under the Act. *Freed*, 976 F.3d at 737.

On October 16, 2020—on Fox's motion—the district court lifted the stay, certified the proposed class, and appointed class counsel. Between September 2019 and October 2020, over fifty defendants moved to dismiss the amended complaint in part or in whole. On January 13,

2021, the district court—deciding the motions jointly—granted in part and denied in part the defendants' motions to dismiss. *See Fox v. Cnty. of Saginaw*, No. 19-cv-11887, 2021 WL 120855, at *1 (E.D. Mich. Jan. 13, 2021). Relevantly, while the district court found that the county treasurers were entitled to qualified immunity, the district court concluded that the counties themselves were not entitled to sovereign immunity. *Id.* at *7–8. Therefore, the district court determined that the class could proceed with their takings, inverse condemnation, due process, and unjust enrichment claims against the counties. *Id.* at *10–16.

The county defendants now appeal the district court's denial of sovereign immunity. The county defendants further argue that, because standing is a threshold jurisdictional issue, we should review the district court's finding that the non-Gratiot County defendants are "juridically linked" for the purposes of standing and reverse the district court's judgment that Fox may bring a class action against those counties that did not harm him. Finally, the county defendants argue that we should exercise pendent appellate jurisdiction to review the district court's finding that Fox adequately alleged a municipal policy or custom that was the moving force behind the alleged constitutional violation as is required to bring a cause of action under Section 1983 against a municipality. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

## II. ANALYSIS

This is an interlocutory appeal. Normally, pursuant to 28 U.S.C. § 1291, our jurisdiction is limited to appeals from "final decisions" of the district court. When a decision "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action," however, this court may have jurisdiction under what has come to be known as the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

"It is well-settled that the collateral order doctrine gives us jurisdiction over appeals of the denial of Eleventh Amendment sovereign immunity." *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645 (6th Cir. 2013) (first citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–44, 147 (1993); and then citing *Mingus v. Butler*, 591 F.3d 474, 481 (6th Cir. 2010)). Therefore, we may consider the district court's denial of sovereign immunity to the counties. Our jurisdiction over the other issues raised is discussed below.

## A. Standing

While we have an independent obligation to assure ourselves of our jurisdiction, there is no question here that—at a minimum—Fox has standing to bring a claim against Gratiot County. The counties argue, however, that the district court's determination that Fox has standing to represent a class of individuals harmed by other counties is reviewable even though it is not a final order. In their view, because Article III standing is a prerequisite to federal court jurisdiction, it is automatically reviewable on an interlocutory appeal. Defendants request that the court reverse and remand for dismissal of Fox's claims against all defendants except Gratiot County for lack of standing.

Unless otherwise provided by statute, the only way a court may maintain jurisdiction over an appeal from a non-final order is under the collateral order doctrine. *See Will v. Hallock*, 546 U.S. 345, 349 (2006). The "collateral order doctrine . . . is best understood not as an exception to the final decision rule laid down by Congress in § 1291, but as a practical construction of it." *Id.* (quotations and citation omitted). For a court to maintain jurisdiction over an appeal from a non-final order pursuant to the collateral order doctrine, that order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Id.* (quotations

and citation omitted). "[T]he finality requirement embodied in § 1291 is jurisdictional in nature. If the appellate court finds that the order from which a party seeks to appeal does not fall within the statute, its inquiry is over." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981).

Because standing, as the Eleventh Circuit noted, "fails the last prong[,]" S*ummit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999), we lack jurisdiction to review this portion of the district court's order.

### B. *Monell* **Liability**

The county defendants argue that we should exercise our pendent appellate jurisdiction to review whether Fox adequately pleaded a violation of federal law under *Monell*, because that issue is sufficiently intertwined with the Eleventh Amendment claim to invoke pendent jurisdiction.

If an issue is not a part of the "'small category' of decisions that fall under the collateral order doctrine," this court may review it only if it exercises pendent appellate jurisdiction. *Lowe v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, 610 F.3d 321, 323 (6th Cir. 2010). "The doctrine of pendent appellate jurisdiction allows an appellate court, in its discretion, to exercise jurisdiction over issues that are not independently appealable when those issues are 'inextricably intertwined' with matters over which the appellate court properly and independently has jurisdiction." *Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 613 (6th Cir. 2001) (quoting *Chambers v. Ohio Dep't of Hum. Servs.*, 145 F.3d 793, 797 (6th Cir. 1998)). "This circuit has interpreted 'inextricably intertwined' to mean that the resolution of the appealable issue 'necessarily and unavoidably' decides the nonappealable issue." *Lowe*, 610 F.3d at 324 (quoting *Summers v. Leis*, 368 F.3d 881, 889 (6th Cir. 2004)).

Here, the Eleventh Amendment issue can be resolved without resolving the counties' liability under *Monell*. While the two issues are similar, the sovereign immunity analysis requires

an analysis of the nature of the entity and the discretion afforded to the county in undertaking a specific activity, while the *Monell* analysis requires an analysis of who implemented and adopted a policy, an issue which is not collateral to the merits of the case or necessary to determine whether the counties are entitled to sovereign immunity.

Therefore, we lack pendent appellate jurisdiction over the district court's denial of the counties' motions to dismiss as to *Monell* liability.

## C. Sovereign Immunity

We now address the remaining issue over which we have jurisdiction—whether the counties are entitled to sovereign immunity. The court reviews the legal question of whether a body is entitled to sovereign immunity de novo but accepts the district court's underlying factual findings unless such findings are clearly erroneous. *S.J. v. Hamilton Cnty.*, 374 F.3d 416, 418 (6th Cir. 2004).

The United States Supreme Court "has repeatedly refused to extend sovereign immunity to counties." *N. Ins. Co. of N.Y v. Chatam Cnty*, 547 U.S. 189, 193 (2006) (collecting cases). Therefore, the county defendants are subject to suit unless they were acting as an "arm of the state" when foreclosing or electing to foreclose upon on plaintiffs' properties.[1] *Id.* at 194.

The county defendants argue that because the Act mandated how they distributed surplus proceeds from tax-foreclosure sales, they were acting as an arm of the State and are entitled to

---

[1] Plaintiffs also argue, in the alternative, that the Eleventh Amendment cannot bar a federal takings claim against a local government. This argument is without merit, as we, along with several other circuits, have concluded that "the Fifth Amendment's Takings Clause does not abrogate sovereign immunity." *Ladd v. Marchbanks*, 971 F.3d 574, 579 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1390 (2021); *see Zito v. N. C. Coastal Res. Comm'n*, 8 F.4th 281, 286–87 (4th Cir. 2021) (first citing *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019); and then citing *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456–57 (5th Cir. 2019)).

sovereign immunity. Plaintiffs argue that the district court did not err when it determined that the counties were not acting as arms of the state because they voluntarily decided to become FGUs.

We have held that to determine whether an entity is an "arm of the State," we should consider the following factors:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (en banc) (internal citations omitted). Considering the discretionary nature of the activity, the Supreme Court's clear preference for denying counties sovereign immunity, and viewing the other relevant factors in their entirety, we find that the counties are not entitled to sovereign immunity.

The first factor—the State of Michigan's potential liability for a judgment—weighs against sovereign immunity. This is "the foremost factor," and "it is the state treasury's potential legal liability for the judgment, not whether the state treasury will pay for the judgment in that case, that controls the inquiry." *Id.* (emphasis omitted) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)). There is no information that indicates that the state would incur any liability. The counties retained the funds, so the counties would likely be responsible for the judgment.

Factors two, three, and four also weigh against sovereign immunity. While counties are created by the Michigan Constitution, *see* Mich. Const. art. VII §§ 1–13 (outlining the rights and obligations of counties), they maintain a significant amount of autonomy. The counties' obligations and functions are those typical of local government, and the officials are elected locally rather than appointed by the state.

Despite this, the counties argue that the lack of discretion they are afforded once they become an FGU entitles them to sovereign immunity. *See Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999) ("Where county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State."). The counties' situation here is different from most "arm of the State" analyses, however, as the counties are entities, not individual officers. *See, e.g. Ermold v. Davis*, 936 F.3d 429, 435 (6th Cir. 2019) (finding that a clerk who refused to issue marriage licenses was acting on behalf of the state, not the county, because state law required her to issue marriage licenses to eligible couples); *Crabbs v. Scott*, 786 F.3d 426, 430 (6th Cir. 2015) (finding that where a state law requiring the collection of DNA from those arrested for felony defenses did not require a county sheriff to collect an acquitted defendant's DNA, the sheriff was acting as a county official, not a state official); *Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684, 693 (6th Cir. 2002) (finding a sheriff was acting on behalf of the state when enforcing a state court injunction that provided him no discretionary authority).

Like these individual officers, the county defendants were obligated to follow Michigan law once they decided to foreclose upon property units. Unlike other county officials, however, their actions leading up to that point were entirely voluntary. The Act on its face is not a mandatory statutory scheme. *See* Mich. Comp. Laws § 211.78(6) (establishing that foreclosure is voluntary). The counties were not required to act as an FGU or to foreclose on any given property, and yet they chose to do so. Because it is clear that the counties "could have opted to act differently, or not to act," they did not act as an arm of the State of Michigan. *Brotherton*, 173 F.3d at 566. Accordingly, they are not entitled to sovereign immunity.

### III. CONCLUSION

We affirm the denial of sovereign immunity and are precluded from addressing the other arguments raised because we lack jurisdiction.